**NUNNALLY INV. CO. v. ROSE, Collector of Internal Revenue.**

(District Court, N. D. Georgia. June 29, 1926.)

Internal revenue ⚹9(26)—Corporation holding property and lending money to its stockholders for their accommodation, not for profit, held not doing business which subjected it to capital stock tax (Revenue Acts 1919 and 1921, § 1000 [Comp. St. Ann. Supp. 1919, and Comp. St. Ann. Supp. 1923, § 5980n]).

A corporation with a capital valued at about $2,500,000, not engaged in any active business, but with its capital largely invested in stable stocks and bonds, and its stock all owned by four members of the same family, *held* not doing business which subjected it to capital stock tax, under Revenue Acts 1919 and 1921, § 1000 (Comp. St. Ann. Supp. 1919 and Comp. St. Ann. Supp. 1923, § 5980n), because of loans to its stockholders, or of a few loans of small amounts to others, not made for profits on the loans.

At Law. Action by the Nunnally Investment Company against J. T. Rose, Collector of Internal Revenue. Judgment for plaintiff.

Anderson, Rountree & Crenshaw, of Atlanta, Ga., for plaintiff.

C. P. Goree, Asst. U. S. Atty., of Atlanta, Ga., for defendant.

SIBLEY, District Judge. This case was submitted to the court without the intervention of a jury. The Nunnally Investment Company was, for the years ending June 30, 1922, 1923, and 1924, assessed an excise tax, measured by its capital stock, as a domestic corporation doing business under section 1000 of the Revenue Acts of 1919 and 1921 (Comp. St. Ann. Supp. 1919 and Comp. St. Ann. Supp. 1923, § 5980n). The tax was collected, refund refused, and this suit brought to recover the amounts paid.

On the trial it was conceded that there existed liability for the taxes collected for the last year, and the taxes for the other two years alone are now contended for. As to them the sole question is whether the corporation, during those two years, was "doing business" within the meaning of the statutes laying the tax. That language in each statute is: "Every domestic corporation shall pay annually a special excise tax with respect to carrying on or doing business, equivalent to $1.00 for each $1,000 of so much of the fair average value of its capital stock for the preceding year ending June 30 as is in excess of $5,000."

Similar or identical language was construed by the Supreme Court in Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct.

342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, Zonne v. Minneapolis Syndicate, 220 U. S. 187, 31 S. Ct. 361, 55 L. Ed. 423, McCoach v. Minehill Railroad Co., 228 U. S. 295, 33 S. Ct. 419, 57 L. Ed. 842, United States v. Emery, 237 U. S. 28, 35 S. Ct. 499, 59 L. Ed. 825, and Von Baumback v. Sargent Land Co., 242 U. S. 503, 37 S. Ct. 201, 61 L. Ed. 460, and by Circuit Courts of Appeal in Traction Co. v. Collector, 223 F. 984, 139 C. C. A. 360, Lane Timber Co. v. Hynson, 4 F. (2d), 666, 40 A. L. R. 1448, and Gatt v. United States, 9 F.(2d) 388. These cases establish that this tax is laid, not on the existence of the corporation, but on its activities as such. The charter powers and purposes may be considered in determining whether the corporation is in business or out of business, but the use rather than the existence of corporate powers is the true point. If the only substantial corporate activity is the ownership and preservation of real and personal property, the receipt of its ordinary income, which arises from the property itself, rather than from active use and management of it, and the distribution of such income to the stockholders, with only such corporate organization and activity as is necessary thereto, there is not such a doing of business as is meant by the act. While such activity is "business" in a broad sense, a tax upon such business would be in substance one on the mere ownership of property, becoming thus a direct tax and beyond the power of Congress, except when apportioned to the states according to population.

A corporation which exists, therefore, only for the holding of fixed properties, and does not deal in the properties by buying and selling them for profit, nor by using them in some business, or by lending for interest or renting for profit to members of the public, is not doing a corporate business for which it may be taxed. The matter was thus summarized in the Von Baumback Case at page 516 (33 S. Ct. 204): "Decision in each instance must depend upon the particular facts before the court. The fair test to be derived from a consideration of all of them is between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails, and doing only the acts necessary to continue that status, and one which is still active, and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain, and such activities as are essential to those purposes."

There is no contradiction in the evidence here. I find the important facts to be these:

The plaintiff corporation has but four stockholders, Mr. and Mrs. J. H. Nunnally, their son, Winship Nunnally, and daughter, Mrs. Frances Nunnally Wheatley. Prior to 1920 it did a large candy business, but sold it to another corporation, the present Nunnally Company of Delaware. The assets of the plaintiff then consisted of the proceeds of this sale, being partly shares of stock in the buying company. Plaintiff, on January 9, 1920, amended its charter, changing its name and altering its powers, so as to exclude many of its former activities, but to permit it still to "buy, hold, own, and sell or dispose of stocks, bonds, evidences of indebtedness, whether secured or not secured, and any other personal property which it desired to deal in, to buy, hold, own, improve, subdivide, deal in, sell, or otherwise dispose of real property," besides other powers under the original charter, and "either for its own account, or as agent or broker representing other persons, and when the latter to charge such reasonable commissions or other compensation for its services as may be lawful and as may be agreed upon."

Prior to June 30, 1921, business was confessedly done which subjected the company to the tax. After that date, on advice of counsel, it was intended to do nothing that would incur the tax, and it is claimed that nothing was done. During the two years now in controversy the company had no separate office, but kept its books in the office of the Nunnally Company, and its securities in the safe-deposit box of that company, its officers being also officers of the latter company. The plaintiff had annual stockholders' meetings, in which nothing was done but to elect one of the stockholders president and treasurer, another vice president and secretary, and these, with a third stockholder, to be directors. Directors' meetings were held semiannually, and the meetings did little save declare a semiannual dividend of $50,000 and discuss in a general way the affairs of the company. The president and vice president were the active officers, drawing a salary each of $2,500 until January, 1923, when it was raised to $5,000. Very little of their time was given to the corporate affairs. No bookkeeper or other regular employee was had.

The capital and surplus of the company on July 1, 1921, totaled $2,493,748.43, and was wholly in personal property, being stocks and bonds in large blocks, cash of $8,419.35, and notes receivable of plaintiff's own stockholders, amounting to $963,600, and of employees of the Nunnally Company $1,934.08. The stocks and bonds were of sound securities, yielding an average steady dividend of about 6 per cent., and the notes were long-time paper, considered good, drawing interest at from 6 to 7 per cent. The notes of employees were for loans made to enable them to buy stock in the Nunnally Company, and were secured by the stock so bought. During each of the two years in question nearly $200,000 of bonds were converted into cash, but in every case it was because the bonds had matured or were "called" by the maker pursuant to provision in the bond. None were sold. In one year $4,400 of stock of the Nunnally Company was sold to the stockholder J. H. Nunnally, but for his accommodation only, at the market price and at a loss. In the second year stock in the Trust Company of Georgia was exchanged for an equal value of stock in its successor corporation on a reorganization. No other stocks were disposed of.

As to the notes receivable, during the first year Bowden Spring Company, which is really owned by J. H. Nunnally, paid its note of $500. The employee note of Charles Lawson received seven credits, and that of E. M. Gordon three credits. Four payments were made by stockholders J. H. and Winship Nunnally on their respective notes. During this year plaintiff loaned to its stockholders $65,400 in 8 items, to E. M. Gordon, an employee of the Nunnally Company, $1,072.50, and to Dorden Spring Company $5,500. During the second year it loaned to its stockholders $22,200 in 3 items, and to Bowden Spring Company $3,000 in 3 items, and to employees of Nunnally Company about $8,000 in 10 items. During this year it collected on notes of its stockholders $22,200 in 2 items, and on employees' notes about $3,000 in 33 items, and from Bowden Springs Company $7,300 in one item. The cash received in excess of that so loaned, together with interest and income from other investments in excess of dividends paid, was invested in sound stocks and bonds, largely of the same issues originally held.

As a result of these transactions, at the end of the two years the assets had increased to $2,722,990, the increase of about $230,000 being distributed through all the items of assets, the general character of each remaining the same. Dividends exhausting the income, so as to keep the assets to the same original value, were not declared, because of the policy of paying a stated semiannual dividend of $50,000, and because a reserve was desired to be built up to meet large disputed income tax claims pending against the plaintiff. Aside from the loans made and

collected, in my opinion no business was done, other than that strictly appertaining to the mere ownership of property. The increase was due, not to management or trafficking for profit, but to natural enhancements in some cases, and mostly to normal dividends and interest on stable stocks and bonds. This would not render the company liable to the corporation stock tax.

As to the loans, money lending is often a business. It is a large part of the business of a banking corporation, of a building and loan company, but it may be only the permanent investment of cash, as in the case of bonds and long-time loans. In this case, a close corporation, having but four stockholders of the same family, has loaned large sums to each of the stockholders. Whether the loans were in approximate proportion to their ownership of stock does not appear. The great bulk of them were in existence at the beginning of the tax years in dispute, and remained unchanged. Other loans, as appears, have been made and repaid. This however, is not an effort to make money out of the public for the stockholders, but is to be considered rather a tentative use by these stockholders of what was really their own. It does not seem to me, while it involves very large amounts, to be putting the corporation into business within the intent of Congress. The stockholders might just as well declare themselves dividends to meet their needs.

As to the loans to the employees of the Nunnally Company, it appears that the plaintiff and its stockholders own the controlling interest in the Nunnally Company. There is evidently an effort to interest the employees of that company as stockholders in it. The loans in small amounts and at moderate interest seem not to have been made to make profit on the loans, but either as a mere accommodation to these buyers, or to secure an indirect and collateral benefit to the stockholders of the plaintiff. The aggregate of them, $5,839.15 at the highest, is very little beyond the $5,000 of capital exempted by the Tax Act, and is insignificant compared to the $2,750,000 constituting the value of the capital of the company. It would seem ridiculous to say that in thus using so small a sum the company is put into business, so as to measure a tax by its whole capital. The tax would be many times any possible profit that could be made in such business. Safely lending money is a usual mode of enjoying such property, and when made for a long time and on good security, or good credit, is not necessarily active business. The Bowden Springs Company loans are

really on account of J. H. Nunnally, as has been remarked.

Plaintiff corporation, of course, owes property and income taxes, but I think it ought to be considered, for the two years in question, as a mere holding company, maintaining rather than using its property, and so not liable to the corporation capital stock tax.

Accordingly a judgment may be framed, recovering the taxes paid for the two years ending June 1, 1922 and 1923.