**UNITED STATES v. DAVIDSON.**

No. 8354.

Circuit Court of Appeals, Sixth Circuit.

Nov. 9, 1940.

W. B. Waldo, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst.Atty.Gen., Sewall Key, Norman D. Keller, and S. Dee Hanson, Sp. Assts. to Atty. Gen., and John C. Lehr and J. Thomas Smith, both of Detroit, Mich., on the brief), for appellant.

W. B. Henry, of Bay City, Mich. (Clark & Henry, of Bay City, Mich., on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

Suit by James E. Davidson, appellee, substituted for James E. Davidson, as trustee, to recover income taxes paid for the years 1934–35 and capital stock taxes paid for the years 1934–37 in the aggregate of $3,611.93 with interest. Appellee recovered and the Government appealed.

The questions presented were: (1) whether the James E. Davidson trust was an association liable for income tax as a corporation under the provisions of Sections 801(a) (2) and 501(a) (2) of the Revenue Acts of 1934 and 1935 respectively [see now Title 26 U.S.C.A. Internal Revenue Code §.3797(a) (3)]; and (2) whether the trust was subject to capital stock taxes for the years involved under the provisions of Secs. 701(a), 105(a) and 401(a) of the Revenue Acts of 1934, 1935 and 1936 respectively. See now Title 26 U.S.C.A. Internal Revenue Code § 1200(a).

The James Davidson trust was created by James Davidson, herein called Capt. Davidson, on August 7, 1923. At that time he was eighty-two years old; had been a highly successful business man, and had accumulated a large estate. Appellee, James E. Davidson, his only son who had grown up in his father's business, was made trustee; and the son and his three sisters were made the beneficiaries of the trust. The trust property consisted of (1) corporate stocks; (2) bonds and notes; (3) bank deposits; (4) the capital stock of the Rock County Sugar Company and the Mount Clemens Sugar Company; and (5) loans to these sugar companies and the Davidson Steamship Company. Capt. Davidson reserved to himself only such portion of his property as he deemed sufficient for his own personal needs.

When the trust was created he was in full possession of his mental faculties but he anticipated approaching blindness and deafness.

The trust property was to be held in trust by the trustee for the benefit of the cestuis que trustent called the beneficiaries or shareholders. There were 40,000 of these shares represented by certificates, which were divided equally between Capt. Davidson's four children. The certificates were transferable but they were never in fact transferred. The trust instrument set forth that "it is expressly declared that a trust and not a partnership or association is hereby created." It further declared "the primary purpose of the trust is the conversion of the trust property into money and the distribution of the net proceeds among the persons holding certificates of shares in proportion to their holdings as hereinafter provided."

The case was tried without a jury and the court found that the miscellaneous stocks, bonds and notes comprising a portion of the trust property were the ordinary type of such securities.

The Rock County Company and the Mount Clemens Company, manufacturing beet sugar, were organized by Capt. Davidson, who was their president and general manager until his death in 1929. When the trust was created Capt. Davidson transferred to it 48,947 shares out of a total of 50,707 shares of the stock of the Mount Clemens Company and 742½ shares out of a total of 800 shares of the stock of the Rock County Company.

After Capt. Davidson's death, James E. Davidson, who had been secretary and treasurer of each company, became the president and general manager of each. Before the creation of the trust both companies were losing money and Capt. Davidson had loaned $638,273.83 to the Mount Clemens Company and $407,046 to the Rock County Company. As indicated above, these loans became choses in action of the trust and in order to salvage them it was necessary to keep the sugar companies going. The trustee would therefore from time to time loan money to these companies without interest. These new loans were always repaid and the old ones reduced.

The Davidson Steamship Company, whose stock was owned by the beneficiaries, owed the trust a large amount of money. The business of this company became unprofitable and during the lifetime of the trust a large number of its vessels became inactive. The trustee loaned large amounts to the steamship company for the purpose of protecting and preserving these vessels until they could be sold. When they were sold the loans were repaid without interest.

The trust was to be terminated upon the death of the last survivor of James E. Davidson's children; but the trustee was empowered to terminate it before that time either by liquidation and distribution or by transferring the trust property to a corporation or partnership-association. Before its termination the trustee was empowered to make distribution at any time within his discretion. For what seems to be substantial reasons he did not begin to make distribution until 1935. Up to December 31, 1937, the financing of the Mount Clemens Company required $1,647,520.16 and that of the Rock County Company required $432,524.93. These requirements increased until 1929 and 1931 respectively. In addition, beginning with 1931, the trustee was engaged in a controversy with the Commissioner of Internal Revenue over whether the trust was liable in the sum of $668,218.58, exclusive of interest, for a transfer tax. This claim was settled in 1936 by the payment of $116,666.67 and interest. In 1936 he was required to pay $50,000 in compromise of the inheritance tax due the State of Michigan and in 1937–38 he paid $130,000 in satisfaction of bank stock assessments.

To meet these and other contingencies the trustee kept on hand large amounts of money which were from time to time invested in securities but the court found upon substantial and undisputed evidence that he had never made any investments with a view to market profits, that his investments were not of a nature or volume to classify him as a banker, broker, trader or money lender; that he had done no more than hold and attempt to preserve the trust property and receive the ordinary fruits of its ownership and that this was incidental to the ultimate liquidation and distribution of the property.

The court found: that during the years 1933 to 1937, inclusive, the trustee had reduced the investments in stocks, bonds and other securities in the sum of $936,766.64; that he had reduced the loans to the steamship company and the sugar companies in the sum of $157,103.81; that he had reduced the bank deposits in the sum of $137,319.86; that he had distributed to the beneficiaries $400,000 in cash in 1935 and $400,000 in cash in 1936, and in 1938 had made a distribution of stocks and bonds of the book value of $342,000 and of the market value of $420,000. He also distributed to the beneficiaries the net income of the trust consisting of interest on securities and bank deposits and dividends on corporate stocks, and in 1936 he commenced an action in equity which sought the settlement of his accounts and the termination of the trust.

Upon these findings of fact on what we regard as substantial and in the main undisputed evidence, the court concluded that the trust was not an association taxable as a corporation under the statutes here involved.

Appellant asserts that the trust had the earmarks of an association in that its organic structure was in many particulars similar to that of a corporation. It points to the provisions for a successor to the trust; to centralized control and management by the trustee or his agents; to the discretion vested in him to sell any or all of the property; to borrow money upon the security of the trust property; to issue, endorse and guarantee commercial paper without personal liability either on the part of himself or the beneficiaries; and to his freedom from liability to the beneficiaries except for a wilful breach of the trust.

Appellant also called attention to the contemplated long life of the trust and to the likeness between the certificates of its shareholders and those of stockholders in ordinary corporations. Additional similarities might be noted but these do not of themselves negative or refute the court's conclusion of law. The use of corporate forms may furnish evidence of the existence of an association but this is not a conclusive test. See Morrissey v. Com'r. 296 U.S. 344, 358, 56 S.Ct. 289, 80 L.Ed. 263; Fidelity-Bankers Trust Co. v. Helvering, App.D.C., 113 F.2d 14, 17; Helvering v. Washburn, 8 Cir., 99 F.2d 478, 481. In the Morrissey case, supra, 296 U.S. at page 356, 56 S.Ct. at page 295, 80 L.Ed. 263, it was said: "'Association' implies associates. It implies the entering into a joint enterprise * * *." See, also, Lewis & Co. v. Com'r, 301 U.S. 385, 388, 57 S.Ct. 799, 81 L.Ed. 1174.

In the present case there was no joint enterprise. The court found upon uncontradicted evidence that the trust was not formed, or continued, by the voluntary act of the beneficiaries. There was no association employed to carry on a business venture. See Marshall's Heirs v. Com'r, 3 Cir., 111 F.2d 935, 938; Sears v. Hassett, 1 Cir., 111 F.2d 961, 962. Two of the beneficiaries did not know of the existence of the trust until more than six months after its creation and these two have been passively acquiescent. The third has always actively objected not only to its creation but to the trustee's administration. Moreover, the "joint enterprise" must be for the transaction of business or "with respect to carrying on or doing business * * *." Morrissey v. Com'r, supra, 301 U.S. at page 356, 56 S.Ct. at page 294, 80 L.Ed. 263. See Sec. 801(a) (2) of the Revenue Act of 1934 and Sec. 501 (a) (2) of the Revenue Act of 1935.

There is no conclusive evidence that the trust was a business venture or that the trustee engaged in business for the purposes of a livelihood or profit. See Flint v. Stone Tracy Co., 220 U.S. 107, 171, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312. The court found that he did not. It found "that he has done no more than hold and attempt to preserve the trust property and receive the ordinary fruits arising from its ownership. * * *"

It is manifest that loaning new money to the sugar companies and the steamship company to protect old loans was not carrying on the business of either company. It is just as obvious that the invest-

ment of idle funds pending the settlement of a trust so large and complicated was not engaging in business. Such activities were only incidental to the liquidation and distribution of the trust estate. See Blair v. Wilson Syndicate Trust, 5 Cir., 39 F.2d 43, 46. There was ample evidence to support the findings of the court and we find no reason to disagree with its conclusions of law.

Affirmed.