**COMMISSIONER OF INTERNAL REVENUE v. GIBBS–PREYER TRUSTS NOS. 1 AND 2 et al.**

**Nos. 8429, 8430.**

Circuit Court of Appeals, Sixth Circuit.

Feb. 11, 1941.

Louise Foster, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Louise Foster, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Albert B. Arbaugh, of Canton, Ohio (Albert B. Arbaugh and Wendell Herbruck, both of Canton, Ohio, on the brief), for respondents.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

The questions presented for our decision are whether the two trusts, of which respondent, The George D. Harter Bank of Canton, Ohio, is trustee, were associations taxable as corporations during the years 1934 and 1935, pursuant to the provisions of Section 801(a) (1) (2) of the Revenue Act of 1934, c. 277, 48 Stat. 680, 26 U.S.C. A.Int.Rev.Acts, page 790, and Section 501 (a) (1) (2) of the Revenue Act of 1935, c. 829, 49 Stat. 1014, 26 U.S.C.A.Int.Rev.Acts, page 811.

Lewis Gibbs died in 1914, the owner of four parcels of commercial real estate in the business district of Canton, Ohio. He also jointly owned, in equal shares with his two sons, four other pieces of real estate in the same community. By his will he devised all the properties to his two sons and daughter in equal shares.

On June 1, 1930, Gibbs' three children created two identical trusts and transferred these properties to the respondent, The George D. Harter Bank, as trustee. Two trusts were created because of the different proportions in which the properties were owned by the cestuis que trustent. One of the trusts was identified as Gibbs-Preyer Trust No. 1 and covered the four properties the decedent jointly owned with his two sons. The other, Gibbs-Preyer Trust No. 2, covered the property individually owned by the decedent.

Under the terms of the trust instruments, each cestui que trust received a trustee's certificate for his proportionate share in each trust which was measured by his undivided joint interest in the real estate conveyed to the trustee. The certificates were first made transferable, but subsequently the trust agreement was modified, requiring the transfer of the interest of a cestui que trust by a separate instrument of conveyance executed and delivered with the formality of a deed accompanied by surrender to the trustee of the certificates representing the interest conveyed. Whereupon, the trustee was required to issue to the transferee a new certificate and cancel the old.

Under the terms of the instrument creating the respective trusts, the trustee was empowered to hold, control and manage the estates; to receive rents and profits; to pay taxes; to provide for insurance, repairs, maintenance and improvements, except where the lessees were required to maintain the properties. It was also authorized to compromise claims against the trusts; to bring suits to protect the trust estates; to borrow money for the trusts' temporary needs and to employ counsel. It was required to keep books of registry showing the respective ownership of the cestuis que trustent and their transfers, if any, and to make monthly distribution to the cestuis que trustent of net rents.

The trustee had legal title to the properties and no single beneficiary had the power to compel a partition of the trust estates. Two-thirds in amount could control the trustee in all matters, including the power to compel it to lease or sell the properties or transfer them to the beneficiaries as tenants in common. The trusts terminated January 1, 1980, according to the terms of the instruments creating them, if not earlier terminated by a vote of the cestuis que trustent owning two-thirds of the estates.

It was the business practice of the decedent, Lewis Gibbs, to own real estate in common with his sons, and after his death his children continued this practice among themselves. When his estate was settled, the properties owned by him and devised to his children were not partitioned. The family policy of holding the properties in common was threatened and the present trusts were created to prevent the breaking up of the estate and for the further reason that the sons of decedent desired to be relieved of active management of the estate and to turn the management of the properties over to their sons.

Article X of the trust instruments which is material to the questions here, is found in the margin. [1]

At the time of creation of the respective trusts, two parcels of the real estate were managed by a real estate agency and the remaining properties were directly managed by the sons of decedent, who acted as agents for the other beneficiaries in the making of leases, supervising repairs, erecting new buildings, etc. There was a contemporaneous oral agreement between the parties to the written trusts that where the properties involved were managed by members of the family or beneficiaries, such persons would be considered agents of the beneficiaries of the trusts, and the properties have been so managed since the creation of the trusts. Leases have been negotiated, tenants secured, rentals fixed and repairs and improvements made by the members of the family in the management of the properties of the trusts. In some instances, buildings have been erected or the existing ones remodeled, the necessity for which was determined by members of the Gibbs family, contracts for the work executed by them and the necessary funds contributed by the beneficiaries.

The trustee paid for insurance and taxes from the trust income whenever the lease did not require the lessee to do so, but the members of the family selected the company in which the insurance was placed and the amount to be carried.

On the execution of the trust instruments, certificates of beneficial interest were issued to the several beneficiaries in proportion to their respective interests, some of which have been since transferred in trust for other members of the family. The trustee has at no time exercised control or management of any of the trust property, but has limited its activities to the holding of legal title to them, the payment of taxes and maintenance and insurance items upon order of a member of the Gibbs family. It has signed leases at the direction of members of the family, collected the rents, paid the bills and kept the necessary records. There have been no sales of any of the real estate in the trusts nor any additional purchased and no accumulations of funds by the trustee except for the payment of taxes.

The Board of Tax Appeals held the trusts here involved were pure trusts and not associations taxable as corporations. The deficiencies involved total $15,356.51.

 It is contended by the petitioner that it was not competent to controvert by parol testimony the plain terms of the written instruments creating the trusts and that the purpose of their creation and taxability as associations must be determined from the language appearing in the instruments. This concept must be rejected. The crucial test in determining whether a trust is an association, taxable as a corporation, must be found in what the trustees actually do

[1] The Trustee shall receive reasonable compensation for the services in the collection and distribution of rents and income, management of the Trust Estate and performance of its trusts hereunder. Certain of the real property conveyed to the Trustee by the Settlors as hereinbefore recited is, at the time of the making of this Indenture, subject to certain leases by the terms whereof the Lessees are required to pay all taxes, maintain repairs, and generally to keep up and preserve the demised property and certain of said property is or may hereafter be from time to time placed in charge of a rental agency or agent by whom the leasing thereof and collection of rentals, payments of taxes, making of repairs and the like are or shall be conducted, so that, with reference to such property, the duties of the Trustee will be substantially limited to the receipt of rentals, keeping accounts and making distribution of such rentals. With reference to such property as is now so demised upon such terms as are just above recited, with reference whereto the duties of the Trustee shall be substantially limited to those just mentioned, and so long as said situation continues with respect to said property, or whenever and so long as the leasing and care of such property may at any time be placed in charge of any rental agent or agency as aforesaid, the compensation of the Trustee for the management of such property with respect whereto such situation exists or shall exist, shall be one per centum (1%) of the income received by the Trustee from such property.

As to all other property of the Trust Estate, and as to the property in this Article aforementioned if and when the above recited situation with respect thereto shall cease to exist or the duties of the Trustee respecting the same be substantially increased, the compensation of the Trustee shall be five per centum of the income therefrom. * * *

and not in the existence of long unused powers. In determining the applicability of the statute, we must look to the actual activities of the entity rather than to its form or possible powers. Gardiner v. United States, 1 Cir., 49 F.2d 992; Dunbar v. Commissioner, 1 Cir., 65 F.2d 447; Little Four Oil & Gas Company v. Lewellyn, 3 Cir., 35 F.2d 149; Commissioner of Internal Revenue v. Brouillard, 10 Cir., 70 F.2d 154; Tyson v. Commissioner of Internal Revenue, 7 Cir., 54 F.2d 29; Willis v. Commissioner, 9 Cir., 58 F.2d 121. It is a well settled rule that the plain terms of a written instrument may not be altered by parol testimony in a controversy between the parties to it, but this rule does not apply to an instrument which has been given with the intention of both parties thereto that it shall become operative only upon some condition. Cowen v. Adams, 6 Cir., 78 F. 536; Burke v. Dulaney, 153 U.S. 228, 335, 14 S.Ct. 816, 38 L.Ed. 698.

■ The findings of the Board that, as an inducement to the execution of the trust instruments, there was a contemporaneous oral agreement between the parties to it that where the properties of the trusts were managed by members of the Gibbs families or beneficiaries, such persons would be considered agents of the beneficiaries and not of the trustee, and that the trustee, during the life of the trust, has not exercised any control or management of any of the trust properties, and has limited its activities to the holding of the legal title to the trust properties, signing of leases, collection and distribution of rents, payment of taxes, maintenance and insurance items upon order of a member of the Gibbs family, were supported by competent and substantial evidence.

■■ Under the Revenue Acts of 1934 and 1935, a tax is imposed upon every corporation and the term "corporation" is defined by statute to include associations (c. 277, 48 Stat. 680, 26 U.S.C.A., Int.Rev. Acts, page 790, c. 829, 49 Stat. 1014, 26 U. S.C.A., Int.Rev.Acts, page 811.

The term "association" as used in these Acts embraces associations as they existed at common law and does not require organization under a statute or with statutory privileges. Whether a trust is an association taxable as a corporation must in the last analysis be determined by the facts peculiar to the case under consideration and in determining a taxable status,

the court will take into consideration the purposes set out in the instrument creating the trust and the activities of the trustee and also of the cestuis que trustent.

■■ It is not always controlling that one or more persons associate themselves together for the purpose of engaging in business for profit. If Congress had desired or intended to tax every association as a corporation it could have done so easily in simple and unmistakable language and if it had intended such an application of the statutes here in question, it would have so provided. It is persuasive that Congress intended to tax as a corporation only associations conducting their business for profit after the method and form of a corporation, with its economic advantages. The Congress has, in repeated enactments, extended over many years, provided for the taxation of trusts, partnerships and associations as separate taxable entities. It is clear it was the legislative intent to exclude one from the other and where the entity or enterprise in question which it is sought to tax as an association under the corporation statute, resembles a corporation in some respects and a pure trust in others, the features of similarity should be compared and the marks of dissimilarity contrasted and the two balanced, and from this the true taxable entity determined.

■ In the present cases, the trustee has done no more than hold the legal title to the properties in the corpus of the trusts, and upon the orders of the cestuis que trustent has paid taxes, insurance, maintenance expenses, signed leases, collected and distributed rents, kept records and received one percent of the gross receipts for its services. The question therefore reduces itself to this: were they such trusts as were created and maintained as mediums for the carrying on of business enterprises and sharing in their gains? Morrissey v. Commissioner, 296 U.S. 344, 357, 56 S.Ct. 289, 80 L.Ed. 263. The concept of a taxable entity as an association under the present statute is that the capital or property of the trust be supplied by the beneficiaries or by some one for them and that the trustee or other designated person is in effect the manager of the undertaking or arrangement and that it carries on a business for profit. The mere receipt of income by the trustee and the payment by it of carrying charges on property, amounts to no more than receiving the ordinary fruits that grow from the own-

ership of property and does not constitute doing business. McCoach v. Mine Hill Railway Company, 228 U.S. 295, 306, 33 S.Ct. 419, 57 L.Ed. 842; Zonne v. Minneapolis Syndicate, 220 U.S. 187, 191, 31 S.Ct. 361, 55 L.Ed. 428.

In the present cases, the trustee did nothing of any consequence with respect to the management and conduct of the business, all of it being carried on by the cestuis que trustent. Article X of the trust instruments limited the duties of the trustee substantially to the receipt of rentals, keeping accounts and making distribution of net rentals to the cestuis que trustent.

No useful purpose would be served by a review of the many authorities dealing with the various aspects of this difficult subject.

In the case of Morrissey v. Commissioner, supra, the court, after reviewing its decisions in Crocker v. Malley, 249 U.S. 223, 39 S.Ct. 270, 63 L.Ed. 573, 2 A.L.R. 1601; Hecht v. Malley, 265 U.S. 144, 44 S.Ct. 462, 68 L.Ed. 949, reexamined the subject and pointed out certain factors to be considered in determining when, under the Internal Revenue Laws, a voluntary unincorporated association assumed the taxable status of a corporation. It eliminated from such status pure trusts designed for the purpose of holding and conserving particular property with incidental powers in the trustees as in traditional types of trusts, but included trusts created as a medium for the conduct of a joint business enterprise and a sharing of the gains when the following attributes or analogies to those of a corporation organized pursuant to the statutory law were present: (1) Title to property embarked in the enterprise held by trustees, as a continuing body, during the existence of trust; (2) centralized management by trustees, as representatives of beneficial owners, whether selected by or with the advice of beneficiaries or designated in the trust instrument with power to select successors; (3) continuity uninterrupted by deaths among beneficial owners; (4) means for transfer of beneficial interests and introducing new participants without affecting continuity; (5) limitation of personal liability of participants to property embarked in the undertaking.

Not all of these features are present in the trusts involved. While title to the assets was in the trustee, and while the con-

tinuity of the enterprise might be affected through the transfer of a beneficial interest by reason of death, these are but the characteristics of a pure trust. There was, however, no limitation of liability of the cestuis que trustent and the trustee did not exercise a centralized management of the properties.

We are of the opinion that the trusts were not associations, taxable as corporations on the ground that they were doing business as such. Lewis & Company v. Commissioner, 301 U.S. 385, 57 S.Ct. 799, 81 L.Ed. 1174.

The orders of the Board are affirmed.