## 1426 WOODWARD AVE. CORPORATION v. UNITED STATES.

### No. 3013.

District Court, E. D. Michigan, S. D.

Oct. 31, 1946.

MacMahon, Abbott & Roberts, of Detroit, Mich., for plaintiff.

Morris Zwerding, Asst. U. S. Atty., of Detroit, Mich., for defendant.

PICARD, District Judge.

This is an action for recovery of capital stock taxes, plus interest, paid by plaintiff for the taxable years 1936 through 1940. These taxes were imposed on the theory that defendant was "carrying on or doing business" as specified in the Internal Revenue Act, 1924, § 700(a), 26 U.S.C.A. Int. Rev.Code, § 1200, Tax, et seq., as follows:

"(a) Domestic corporations. For each year ending June 30, * * * there shall

271

be imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1 for each $1,000 of the adjusted declared value of its capital stock."

Treasury Regulations 64 (1938 edition) define what Congress intended by "carrying on or doing business" and Article 43 of those Regulations gives a number of illustrations under several of which this plaintiff would be "doing business" without question. As for example sub-division (a) (3) of Article 43 specifically enumerates as such, corporations

"(3) leasing or managing properties, collecting rents or royalties;"
or

"(4) managing, financing, controlling, or directing the operations, performing any function, or in any other way aiding or serving the general purposes of any affiliated or related company;"

If the Regulations terminated here, the status of plaintiff would be easily determined. However they also provide in Article 43 (b) (1):

"(1) A corporation is not subject to the tax if its corporate powers are limited to the mere owning and holding of property and the distribution of its avails, or, although incorporated for the purpose of doing business, if it has retired from the business for which it was organized and has reduced its activities to the mere ownership and holding of property, the distribution of its avails, and doing only such acts as are necessary to the maintenance of its corporate existence and the private management of its purely internal affairs. However, a corporation which has retired from its principal business is subject to the tax if, nevertheless, it engages in other business activities or maintains its organization for the purpose of continued effort in the pursuit of profit or gain."

The Facts.

Both parties agree that in a controversy of this nature much depends upon the particular facts involved since no set rule specific enough can cover all possibilities. Von Baumbach v. Sargent Land Co., 242 U.S. 503, 516, 37 S.Ct. 201, 61 L.Ed. 460. It is also well settled that the nature and extent of corporate activities, and not corporate powers, controls. Goodyear Inv. Corporation v. Campbell, 6 Cir., 139 F.2d 188; United States v. Three Forks Coal Co., 3 Cir., 13 F.2d 631; Nunnally Inv. Co. v. Rose, D.C., 14 F.2d 189; 5 Cir., 22 F.2d 102. And furthermore the extent of "doing business" is immaterial. If the corporation is "carrying on or doing business for any part of such year" even in a small way, the tax must be paid. United States v. Emery, 237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825; Von Baumbach v. Sargent Land Co., supra.

With these fundamentals established, we proceed to the facts which are that D. J. Healy, Sr., December 31, 1908, secured from the Moore family of Detroit a 99-year lease of property located at 1426 Woodward Avenue, in the business section of Detroit where D. J. Healy Shops is now located. By that lease Mr. Healy, Sr. (he died May 18, 1933), was required to pay $15,000 per year plus taxes and insurance. It also provided for the erection by him of a six story building to be commenced by May 1, 1910, and completed February 28, 1911. This was done.

In 1924 plaintiff corporation was organized and the Healy 99-year lease assigned to it, Mr. Healy, Sr., receiving all its corporate stock. Plaintiff then mortgaged and hypothecated its interests in both leasehold and building to Security Trust Company for the sum of $450,000, evidenced by bonds. The primary purpose of this bond issue was undoubtedly to benefit the D. J. Healy Shops as conducted by D. J. Healy.

On June 25, 1924, plaintiff corporation leased the land and building to D. J. Healy, Sr., who at that time was operating D. J. Healy Shops as an individual, and in 1928 D. J. Healy Shops was incorporated. Mr. Healy, Sr., assigned his lessee interests to plaintiff corporation January 30, 1928, and the Healy Shops (corporation) lease was modified January 18, 1932, by which it was required to pay plaintiff rental, based upon the annual net retail sales of D. J. Healy Shops, as follows: 3 per cent on net retail sales up to and including $1,000,000; 3¼ per cent on the next $250,000; 3½ per cent on the next $250,000; 3¾ per cent on the

next $250,000; 4 per cent on all sales over $1,750,000. The minimum annual rent was set at $25,000.

The new lease also required that lessee (Healy Shops) pay all real estate taxes and insurance.

The facts further show that prior to 1936 plaintiff bought up some of its own bonds at a discount, and in 1939 plaintiff corporation retired its entire bond issue from which time all plaintiff has done and now does is collect the rents, its sole source of income, and distribute them to the proper parties.

It is defendant's contention that because plaintiff (1) bought up its own bonds; (2) liquidated its entire bond issue; (3) regularly had stockholders' meetings; (4) employed auditors particularly to check D. J. Healy Shops to see that all lease covenants were carried out, including percentage of sales; and (5) floated the $450,000 loan to assure success of the D. J. Healy Shops, that it was "doing business" within the meaning of the act and regulations pertaining thereto.

### The Law

The court has examined the rather multitudinous array of authorities and has applied to this case the yardstick that seems general in most of those decisions, to-wit, that in order to come under the act the business done must necessarily involve "the pursuit of gain." United States v. Davidson, 6 Cir., 115 F.2d 799; Clallam Lumber Co. v. United States, D.C., 34 F.2d 944.

To begin with we are not impressed by plaintiff's position that it really had no auditors, no office, and no expenditure worth considering, since its office was in the same building as the Healy Shops and the auditors selected were paid for by the Healy Shops.

This entire arrangement is a family affair initiated for tax purposes, for convenience and for security of investment. If plaintiff were a corporation performing the same functions as any other corporation but composed of stockholders who had nothing to do with the Healy family, it would have been necessary to have its own auditors to see that the lease was complied with and that it received its proper income. Just because it is a family corporation does not change its legal status. We must treat plaintiff as a distinct entity and hold that selection and payment of auditors was at least indirectly made and participated in by plaintiff.

But as the matter is now presented to this court, the government is stripped of two potent essentials of doing business, to-wit, numbers 1 and 2, above, because during the taxable period referred to, 1936–1940, plaintiff did not purchase any of its own bonds, and in 1939 the bond issue was completely retired.

As for the remaining three, we dismiss numbers 3 and 4 as any indicia of doing business. It has never been held that to have stockholders' meetings constitutes doing business, and we find no authority that just because rental was paid on a graduating, escalator basis that this is "doing business." Treasury regulations interpreting the law exempt corporations that merely own property and collect rentals. Those regulations do not limit or define rentals to cover only flat payments and certainly it was anticipated that auditors would be used, offices hired, and any incidentals of doing business would always be present whether rents were paid on a set flat basis or by percentage of sales. In this particular instance the cost of auditors, office, and the incidentals of running a corporation of this kind were limited because the parties interested didn't need auditors checking on each other.

On this point, further, Detroit Hotel Co. v. Brady, D.C., 275 F. 995, 996, cited by defendant, is not similar even though there was an escalator rent agreement before the court. This phase did not control the decision, however, since the Hotel company was building the hotel and making loans of its own to carry on. In addition the case was not under the Capital Tax Act. Nor is United States v. Hercules Mining Co., 9 Cir., 119 F.2d 288, 289, also cited, in point. There the company was engaged in extensive operations looking for ore. This is also true of United States v. Western Shore Lumber Co., 9 Cir., 136 F.2d 628, which at first reading apparently favors defendant's position. In that case it was necessary for the company to hire auditors and inspectors to see how much and what lumber was be-

ing taken from their land. Although somewhat similar it was not an escalator on rent case. It was a needed checking of the amount and kind of lumber taken. Furthermore, a close perusal of the facts indicates that there are many other distinguishing marks, as for example, the court held that while the purpose of the defendant was not "liquidating", nevertheless that is exactly what it was doing. Here the theory of "purpose" of incorporation vs "activities" was applied.

But the 5th proposition gives the court reason for deliberation. One of the tests laid down in Nunnally Inv. Co. v. Rose, supra, was that the corporation had to create an income by dealing with the general public not solely created by its own property. And the case of Edwards v. Chile Copper Co., 270 U.S. 452, 46 S.Ct. 345, 70 L.Ed. 678, however, is authority for the contention that if the lessee corporation was actively aided and actually benefited by the financing operations of the other corporation that this would be "doing business."

Let us examine the facts in the case at bar. The $450,000 mortgage loan was put on plaintiff corporation in 1924. The D. J. Healy Shops then consisted of D. J. Healy, Sr., alone. It may be presumed, although the proof is not adequate, that the loan was for financing the Healy Shops. In 1928 the D. J. Healy Shops became a corporation and later (1932) arrangements made with plaintiff placed the new corporation on an escalator basis for paying rent. There is no evidence that either plaintiff or the Healy corporation contemplated new financing. That had already been done. In other words, plaintiff company rented all its assets to the Healy Shops corporation, a distinct entity from D. J. Healy, Sr., doing business as the Healy Shops. What gain was reflected in plaintiff's activities? It did not establish or fortify the credit of the Healy Shops. Plaintiff did not borrow that money for the new corporation for it had already incurred its mortgage debt. It primarily mortgaged its assets, undoubtedly, as stated herein, for D. J. Healy but

not the new corporation. It may even be admitted that the Healy Shops corporation had advantage of the original financing until the bond issue was paid in 1939. But does the fact that the parent company pays off its own obligations with rents received from its subsidiary place that company in the category of "doing business" within the meaning of the act in question? We think not. Had plaintiff borrowed the money to help this corporation a different question would be presented. Perhaps the already accomplished financing was one reason why the Healy Shops were incorporated, plus the added reason that the father desired to distribute certain of his assets through gifts or purchase of corporate stock, among members of his own family.

We think that this case falls squarely under Kingkade Hotel Co. v. Jones, D.C., 30 F.Supp. 508, where it was held that receiving rentals, paying taxes, interest and insurance, and providing for the mortgage indebtedness was not doing business. The conclusion of that case, of course, is not binding upon this court, but in McCoach v. Minhill R. Co., 228 U.S. 295, 33 S.Ct. 419, 57 L.Ed. 842, we find a further fortifying authority. The Minehill Company built the railroad and operated it for years. Then it leased all its railroad, side tracks, extensions, and everything else to the P & R Railway Company for a term of years and from then on only collected rents. The court held that it was not doing business. While it does not appear that there was a mortgage on the Minehill Railway Company's assets, the existence of a railroad without some kind of a mortgage would have been most unusual.

It is our opinion, therefore, that there are distinctions found in this case not discernible in those cited by defendant. It is more in line with Harrisburg Hotel Co. v. United States, 3 Cir., 145 F.2d 116, upon which plaintiff also relies. In that case, as here, there was no aiding or financing of the tenant.

For the reasons given we hold that plaintiff may recover.