648

## BELLOWS v. PORTER et al.
### No. 6105.

United States District Court
W. D. Missouri, W. D.
April 25, 1952.

Krigel, Honsinger & Bigus, John E. Honsinger, and Blackmar, Newkirk, Eager, Swanson & Midley by Ralph M. Jones, all of Kansas City, Mo., for plaintiff.

Johnson, Lucas, Graves, & Fane by Arthur J. Doyle, Kansas City, Mo., for defendants.

REEVES, Chief Judge.

At the conclusion of the trial in the above cause the court granted a motion of the defendants for a decree dismissing the first count for lack of equity and for a directed verdict in favor of the defendants on the second count.

Able and earnest counsel for plaintiff have filed motion for a new trial on each count and have supported same with a learned and laboriously prepared brief. It is counsel's contention that the court grievously erred on both counts and that a new trial should be granted on each count. On the first count plaintiff seeks the specific performance of a contract which he pleads, and on the second count damages for the alleged dilution and cheapening of stock owned by the plaintiff and which acts of the defendants are alleged to have been fraudulent.

After eliminating many surplus averments on the first count, it appears simply that the plaintiff and the codefendant J. F. Porter, Jr., became interested in the purchase of the capital stock of Electra Manufacturing Company, a local corporation. By their arrangement the plaintiff became the owner of one-third of the 20 shares of the capital stock of said company and the codefendant, J. F. Porter, Jr., purchased the balance. Concurrently with the acquisi-

tion of said stock the plaintiff entered into an option agreement with the said J. F. Porter, Jr., which in effect provided that the stock thus acquired by him might be purchased by the said Porter at any time within ten years; the purchase price to be the then book value of the stock. Such agreement was dated March 1, 1946.

It is this clear and unambiguous agreement that plaintiff now seeks to enforce. He does so upon the averment in his complaint that at approximately the same time the said defendant took an undated resignation of the plaintiff as president and director of said company and that "it was further verbally agreed that neither the option nor the resignation could be exercised separately and that if defendant Porter exercised either, he would exercise the other simultaneously therewith; * * *."

Subsequently, it is averred and the testimony supports the averment, the resignation of the plaintiff as the president and director of Electra Manufacturing Company was accepted by the Board, and it is now contended that he is entitled to enforce the written contract as thus modified by a contemporaneous oral agreement.

It does not require the citation of authorities to defeat a theory of that kind. It is the rule supported by a wealth of unvarying authorities that "the plain terms of a written instrument may not be altered by parol testimony in a controversy between the parties to it, * * *." Commissioner of Int. Rev. v. Gibbs Preyer Trusts Nos. 1 & 2, 6 Cir., 117 F.2d 619, loc. cit. 623. In the above case the court made an exception upon which counsel apparently relies in this case. Such exception was expressed by the court in the same paragraph in the following language: "* * * but this rule does not apply to an instrument which has been given with the intention of both parties thereto that it shall become operative only upon some condition."

The option contract in this case was not thus conditioned. Moreover, the plaintiff seeks to enforce the contract, not defeat it. He does not attempt to enforce it according to its terms but in accordance with an alleged contemporaneous oral modification of the written contract. In other words, the named defendant was not to be given 10 years within which to exercise his option to purchase, but, by a modifying oral agreement, such option must be exercised upon the happening of a contingency. That is, upon the acceptance of the resignation of the plaintiff as president and director of Electra Manufacturing Company.

The law applicable under such circumstances is simple, well settled, and easily applied. It would follow that the action of the court in dismissing the first count at the conclusion of the plaintiff's evidence was right and should not be disturbed.

On the second count it is contended by the plaintiff that the acts of the defendants as members of the board of directors and stockholders of Electra Manufacturing Company in increasing the capital stock from 20 shares to 1020 shares was fraudulent and "constituted a scheme to defraud the plaintiff within the corporate powers of the company by deflating his common stock interest from $\frac{1}{3}$ to 1/153 and thereby enable defendant Porter to exercise the option aforesaid and acquire plaintiff's stock at a price of approximately $1,000 instead of its book value as called for in said option of approximately $30,000; that such acts were not in good faith for the interests of the corporation, but on the contrary were in bad faith and done wrongfully, wilfully and maliciously at the instance of the defendant Porter as majority stockholder for his own interest and profit and to cause injury and loss to the plaintiff; * * *."

Recovery is conditioned of course on this count upon the theory that the plaintiff would not be entitled to enforce his contract on the first count.

The testimony was replete with information concerning the financial problems vexing Electra Manufacturing Company during the executive leadership of the plaintiff.

The named codefendant, J. F. Porter, Jr., not only was required to invest heavily in the issues of preferred stock of that

**650**

company, but, in addition he made large financial advancements to maintain the company's credit and to preserve its solvency. And the method of refinancing finally contrived by the majority of the board and majority in interest was in accord with the approved plans. The board of directors complied with the law in authorizing the increase and admittedly the plaintiff was extended an opportunity to acquire one-third of the increased stock. If of the value asserted by the plaintiff, then it seems incredible that he could not have arranged to finance his part of the increase inuring to him. He simply avers that he was unable to carry his part of the load and that the defendants knew that. With monetary conditions such that loans are constantly being sought by lenders, certainly the plaintiff could have obtained financial assistance on securities so valuable when used as collateral and treated as such.

▇▇▇ It is the rule that fraud cannot usually be imputed to one in doing such an act or a series of acts as he has a legal right to do.

The well prepared brief of plaintiff's counsel has been examined and no reason appears why the court should not adhere to the ruling made at the time of the trial. Consequently the motion for new trial on each count should be and will be overruled.