George G. ABRAHAM and Herbert Abraham, Trustees of the Abraham Trust, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 18470.

United States Court of Appeals Sixth Circuit.

Feb. 13, 1969.

Taylor Malone, Jr., Memphis, Tenn., for plaintiffs-appellants.

Lester B. Snyder, Dept. of Justice, Washington, D. C., for defendant-appellee; Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, William A. Friedlander, Marco S. Sonnenschein, Attys., Dept. of Justice, Washington, D. C., on brief; Thomas L. Robinson, U. S. Atty., Memphis, Tenn., of counsel.

Before WEICK, Chief Judge, and O'SULLIVAN and EDWARDS, Circuit Judges.

EDWARDS, Circuit Judge.

This case presents a single legal issue: Where a trust instrument provides the trust with the normal characteristics of a corporation and gives the trustees the normal powers necessary to conduct business, do these facts require that the trust be regarded as an "association" which is taxable like a corporation, even though its actual activities are consistent with those of a liquidating trust?[1]

Chief Judge Bailey Brown, sitting in the United States District Court for the Western District of Tennessee, answered this question affirmatively and granted appellee's motion for summary judgment.

Except for a conflict of opinion in the decided cases in this circuit, we would affirm on Judge Brown's well-reasoned opinion. Abraham v. United States, 272 F.Supp. 807 (W.D.Tenn.1967).

The background facts of this case are not in dispute. The District Court opinion recites them thus:

"Plaintiffs, George G. Abraham, and Herbert Abraham, Trustees of the Abraham Trust, have sued the defendant, United States of America, for a refund of federal income taxes in the amount of $70,054.63 for the taxable years ending October 31, 1960, through October 31, 1963, which the Abraham Trust paid under protest. These income taxes were assessed as a result of the Internal Revenue Service's determination that the Abraham Trust was an association taxable as a corporation, under the Internal Revenue Code of 1954, § 7701, and Treasury Regulations § 301.7701.

* * * * * *

"For a period of approximately forty years prior to May 20, 1950, Abraham Bros. Packing Company (Abraham Bros.), a Tennessee corporation, was engaged in Memphis, Tennessee, in the business of slaughtering and processing livestock and in packing and selling meat, meat products, and meat by-products. In the operation of this business, Abraham Bros. owned a plant and premises, consisting of certain real estate, buildings, machinery, and other improvements, together with railroad sidings and sewage facilities. The business was a closely-held family corporation which, in 1950, had about five hundred employees.

"For various reasons, the officers and stockholders of Abraham Bros. decided to cease operating as a meat packinghouse and on May 20, 1950, the corporation leased its packing plant to Wilson & Co., Inc. The lease covered certain real estate, buildings, machinery, and equipment and was for an initial term of twenty years at an annual rental of $100,000 for each of the first two years and $80,000 per year thereafter. At the expiration of the initial term, Wilson & Co. had an option under the lease to purchase the leased property for $500,000, and as an alternative, the lessee had the option to renew for an additional twenty years on the same terms and conditions, except that the rental was to be reduced during this second twenty-year period to $32,150.04 per year. At the end of the second twenty-year period, Wilson & Co. had the option to purchase the leased property for $100,000. If Wilson & Co. failed to purchase, the leased property was to

---

1. The Treasury Regulations define a liquidating trust as follows:

"(d) *Liquidating trusts.* Certain organizations which are commonly known as liquidating trusts are treated as trusts for purposes of the Internal Revenue Code. An organization will be considered a liquidating trust if it is organized for the primary purpose of liquidating and distributing the assets transferred to it, and if its activities are all reasonably necessary to, and consistent with the accomplishment of that purpose. * * * " Treas.Reg. § 301.7701–4(d).

revert to its owners. In general, the obligations with respect to the leased property, such as paying real estate taxes, fell on the lessee, although some remained with the lessor. As an example of the latter, during the first fifteen years of the lease, if it became necessary to erect facilities as a substitute for or an adjunct to the public sewage facilities, such installation was to be the joint responsibility of the lessor and lessee. On May 23, 1950, Wilson & Co. took possession of the premises, rehired most of the five hundred former employees of Abraham Bros., retained George G. Abraham, one of the plaintiff trustees, as General Manager of the plant, and began making monthly payments to Abraham Bros. as provided for in the lease.

"On October 30, 1950, the Board of Directors of Abraham Bros. voted to liquidate the corporation in not more than two years, and notice of the adoption of the plan of liquidation was given to the Commissioner of Internal Revenue as required by law.

"On October 27, 1952, the stockholders of Abraham Bros., of whom there were over thirty, voted to direct the appropriate officers of the corporation to surrender its charter and this was done two days later. At this same meeting, the stockholders considered and approved a document entitled 'Agreement and Declaration of Trust,' which authorized the appropriate officers to convey all the assets of the corporation to Ben Abraham, George Abraham and George G. Abraham, as Trustees of the Abraham Trust, and this was done forthwith. The terms of this trust agreement are set forth hereafter.

"In the early part of 1963, after negotiations among Wilson & Co., Inc., John Morrell & Co., and the trustees, the lease was terminated by agreement and the leased property was sold by the Abraham Trust to John Morrell & Co. for a cash payment of $500,000 and assumption of a mortgage on the leased property, the balance of which was $309,557.87. The proceeds of this sale were paid to the beneficiaries of the trust as final distributions.

"From 1950 until its dissolution in 1952, Abraham Bros. filed corporate income tax returns and paid income taxes; from 1953 through 1959, the trustees have filed only fiduciary income tax returns and have paid no income tax. However, after an audit, the Internal Revenue Service determined that the Abraham Trust was an association taxable as a corporation and it was able to and did assess deficiencies in corporate income taxes and interest for the 1960–1963 taxable years in the total amount of $70,054.63. Plaintiffs thereupon filed corporate returns for these years and paid these taxes, all under protest. On April 21, 1965, claims for refund for the aforesaid amount were filed, these claims were disallowed, and plaintiffs thereafter instituted suit in this court." Abraham v. United States, 272 F.Supp. 807, 808–09 (W.D.Tenn.1967).

The trust agreement provided for distribution of trust shares to the more than 30 former corporate shareholders in exact proportion to their stockholdings. It provided for transferability of the trust shares. It provided for division of the trust income. It provided for liability as to trust shareholders to be limited to the value of their shares. And the management of the trust was centralized in three trustees, who held title to trust property as a continuing body. The trust agreement also provided for a seventy-five year life for the trust which could be extended.

These are, with one addition, the exact criteria described in the leading case, Morrissey v. Commissioner of Internal Revenue, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263 (1935), in which Chief Justice Hughes defined when a trust is an "association" for purposes of federal income

tax laws (now Int.Rev.Code of 1954 § 7701, and Treas.Reg. § 301.7701).[2]

The additional requirement for a trust to be considered an "association" for purposes of section 7701 is, in the language of *Morrissey*, that it be "an enterprise for the transaction of business." Morrissey v. Commissioner of Internal Revenue, *supra* at 356, 56 S.Ct. at 295. And in a companion case, Chief Justice Hughes defined how that determination was to be made:

> "We agree with the Circuit Court of Appeals that weight should be given to the purpose for which the trust was organized, but that purpose is found in the agreement of the parties. Not only were they actually engaged, as the Board of Tax Appeals determined, in carrying on an extensive business for profit, but the terms of the trust instrument authorized a wide range of activities in the purchase, improvement and sale of properties in the cities and towns of the state. *The parties are not at liberty to say that their purpose was other or narrower than that which they formally set forth in the instrument under which their activities were conducted.*" Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 373–374, 56 S.Ct. 285, 287, 80 L.Ed. 278 (1935). (Emphasis added.)

Applying the test of these cases, which have never been overruled or modified, we find broad powers to conduct business conveyed to the Abraham trustees by the trust instrument: [3]

> "The trustees shall have entire control and management of the trust property to be conveyed to it, subject to any and all outstanding leases thereon. They shall collect any and all rents due under any and all outstanding leases, and shall perform all of the obligations and undertakings of the landlord in such outstanding leases. They may further convey good and valid title to any real estate conveyed to them under this trust, if any options to purchase the same which may be outstanding are exercised. They may also sell any property or any part thereof not covered by outstanding lease or option contracts on such terms and at such times and on such conditions as they may think best. They are hereby authorized to borrow money for temporary exigencies, or for erecting any buildings on any lands which may be conveyed to them hereunder, in such manner and upon such terms as they think best; and they are authorized to execute and deliver their notes as trustees for any such sums borrowed. They may also exe-

---

2. Treasury Regulation § 301.7701–2 states the criteria for determining whether an association is taxable like a corporation:

 "(a) *Characteristics of corporations.* (1) The term 'association' refers to an organization whose characteristics require it to be classified for purposes of taxation as a corporation rather than as another type of organization such as a partnership or a trust. There are a number of major characteristics ordinarily found in a pure corporation which, taken together, distinguish it from other organizations. These are: (i) Associates, (ii) an objective to carry on business and divide the gains therefrom, (iii) continuity of life, (iv) centralization of management, (v) liability for corporate debts limited to corporate property, and (vi) free transferability of interests. Whether a particular organization is to be classified as an association must be determined by taking into account the presence or absence of each of these corporate characteristics. The presence or absence of these characteristics will depend upon the facts in each individual case. In addition to the major characteristics set forth in this subparagraph, other factors may be found in some cases which may be significant in classifying an organization as an association, a partnership, or a trust. An organization will be treated as an association if the corporate characteristics are such that the organization more nearly resembles a corporation than a partnership or trust. See Morrissey et al. v. Commissioner of Internal Revenue (1935) 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263."

3. Cf. A. A. Lewis & Co. v. Commissioner of Internal Revenue, 301 U.S. 385, 57 S.Ct. 799, 81 L.Ed. 1174 (1937).

cute deeds of trust or mortgage securities for any sums so borrowed.

"No purchaser, mortgagee, lessee or lender shall be responsible for the application of money paid as grant or otherwise to the trustees, or loaned to the trustees. The trustees may exchange land and purchase additional land if in their judgment the same should be necessary. They may grant releases and acquire easements of any kind and character over any land to be conveyed to them or hereafter acquired by them. They may maintain, at the expense of the trust, suitable offices for the transaction of the business of the trust, if such be necessary; and may incur such other expenses, including, but without limitation, the right to engage employees, agents and servants and lawyers as they may think best; and they may execute, acknowledge and record any and all instruments necessary or convenient for the purposes of this trust. They may make any and all such contracts and do any and all such things as they think best for the maintenance, management and operation of the trust property and of the trust, and are authorized to pay any expenses necessary to the conduct and operation of this trust out of the assets thereof.

\* \* \* \* \* \*

"The trustees shall collect any and all income arising from the rental, sale, or other disposition of the trust property. They shall annually, or oftener in their discretion, divide the net income received from the trust property among the shareholders; provided, however, that the trustees may set aside before paying any dividends whatever, such sums as they see fit for sinking funds or contingency funds, to be applied to the repaying of loans made by the trustees or by their predecessors in title, whether secured or unsecured by mortgage on all or part of the trust property or otherwise; to the making of repairs or alterations in said property; and to meeting extraordinary expenses. They shall further pay any indebtedness, secured or unsecured by their predecessors in title which was outstanding at the time of the conveyance of the trust property to them. They may invest and reinvest any funds and any money coming into their hands in any assets or securities that they may see fit. The decision of the trustees as to what shall constitute net income shall be conclusive."

 Where such broad powers as these for conducting a business for profit have been carefully spelled out, we do not think they can be negated by the self-serving limiting declaration contained in the last paragraph of the trust instrument.[4]

We think it is clear that the Abraham trustees after transformation of the corporation into a trust in 1952 had all the requisite powers which were necessary to conduct the prior business (or other business) for profit under the express language of the trust instrument.

We do not, however, read appellants' brief as denying the breadth of the language of the trust instrument. The essential point appellants make is that whatever the trust instrument may have provided, the trustees and beneficiaries of the trust never intended to conduct a business for profit, and aside from the requirements for liquidating the original corporation and a few items more or less incidental thereto, they never in fact did so.

 The District Judge specifically found that the trustees collected rents from Wilson & Co., sold certain properties, borrowed and repaid money, and operated a business office. If the trust

---

4. "This trust is created soley for the reason that Abraham Bros. Packing Company, a Tennessee corporation, is in process of liquidation. The trustees hereby declare that it is not their purpose to create a plan for carrying on business in the ordinary corporate sense. \* \* \* The trust hereby created shall not be deemed or considered a trust operated for financial profit. \* \* \*"

instrument had limited the trustees to those activities which were required for normal liquidation of the prior corporation and activities incidental thereto, we doubt that the activities referred to above would have served to change a liquidating trust into an association taxable like a corporation. See United States v. Davidson, 115 F.2d 799 (6th Cir. 1940).

██ But the basis for our affirmance of the judgment of the District Court is the power granted to the trustees to conduct a business for profit rather than the acts performed by them in doing so. While we recognize that in some sense this seems to elevate form over substance, the problems with any other interpretation of the revenue code and regulations are substantial ones. Taxability of a trust set up with all the normal powers and incidents of a profit corporation should not depend upon the success or failure of those forming such a trust to find opportunities for the profitable conduct of business. The determination of what is or is not an "association" for purposes of section 7701 must be made in accordance with the declared intentions of the persons setting up the trust in the trust instrument rather than by the favorable or unfavorable business opportunities or results which follow.

Appellants argue, and we readily concede, that the express language in Commissioner of Internal Revenue v. Gibbs-Preyer Trusts Nos. 1 & 2, 117 F.2d 619 (6th Cir. 1941), must be read as exactly contrary to the holding just expressed. In that case this court said:

> "It is contended by the petitioner that it was not competent to controvert by parol testimony the plain terms of the written instruments creating the trusts and that the purpose of their creation and taxability as associations must be determined from the language appearing in the instruments. This concept must be rejected. The crucial test in determining whether a trust is an association, taxable as a corporation, must be found in

what the trustees actually do and not in the existence of long unused powers." Id. at 622–623.

As early as 1944, however, this court correctly recognized the thrust of the *Morrissey* case [Morrissey v. Commissioner of Internal Revenue, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263 (1935)] saying:

> "In the Morrissey case, supra, the Supreme Court declared that the character of the trust was determined by the trust instrument, and pointed to many attributes of a corporation which we find characteristic of the trust in the instant case." Sherman v. Commissioner of Internal Revenue, 146 F.2d 219, 225 (6th Cir. 1944).

This view has since been reiterated in Main-Hammond Land Trust v. Commissioner of Internal Revenue, 200 F.2d 308 (6th Cir. 1952), and in Scofield's Estate v. Commissioner of Internal Revenue, 266 F.2d 154 (6th Cir. 1959), both of which cases cited and relied upon the *Morrissey* decision.

██ We now expressly overrule the language quoted above from Commissioner of Internal Revenue v. Gibbs-Preyer Trusts Nos. 1 & 2.

The judgment of the District Court is affirmed.