### KEATING–SNYDER TRUST v. COMMISSIONER OF INTERNAL REVENUE.

No. 10037.

Circuit Court of Appeals, Fifth Circuit.

March 28, 1942.

Geo. S. Atkinson, of Dallas, Tex., for petitioner.

O. W. Hammonds, Sewall Key, J. Louis Monarch, and A. W. Prescott, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Vernon F. Weekley, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

The petition for review involves income tax for the calendar year 1936. The question for decision is whether the Commissioner and the Board of Tax Appeals erred in determining that the petitioner, Keating-Snyder Trust, J. Zeppa, Trustee, is an association taxable as a corporation within the meaning and intendment of § 1001(a) (2) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 971, and Articles 1001-1-2-3-4 of Treasury Regulations 94 promulgated thereunder.

In August, 1933, J. Zeppa, who was engaged in the business of drilling oil wells in Texas, visited New York and there entered into an oral agreement with four of his friends, who agreed to furnish Zeppa with $30,000 for the purpose of purchasing oil properties in the East Texas oil field. The money was paid to Zeppa, and it was agreed that the four contributors would receive their money back with interest before Zeppa would share in the returns from the undertaking. The money was used to purchase two producing oil and gas leases in the name of "J. Zeppa, Trustee". Thereafter additional wells were drilled, and all of them were producers. The $30,000 was insufficient to fully pay for the leases and the development thereafter done upon them, and Zeppa used his personal credit with supply houses, and also borrowed money for use upon the leases, and "as trustee" executed a deed of trust covering one of the leases to secure the payment of notes made by him.

In July or August of 1934 the five men interested in the undertaking signed a "Trust Agreement" which had been prepared by Zeppa. The agreement was pre-dated to September 20, 1933, so as to give effect to the transaction from the time of the purchase of the oil properties. The instrument provided that the properties were to be held by "J. Zeppa, Trustee" Zeppa was to manage the property, pay debts of the trust, establish such reserve funds for further development of the leases as he might "deem necessary", and, "in his discretion, make distribution to the Trustors prior to the complete liquidation of the Trust debts". He was to return to the four contributing trustors the amount of money advanced by them plus interest payments to be made in proportion to the amount of money contributed by each of them. After repayment of these amounts, funds were to be distributed in stated proportions with Zeppa receiving a three-ninths portion. ·

By the terms of the agreement the trustee was to serve without compensation, but thereafter by amendment it was provided that the "trustee or managing partner, whoever he may be" should receive a salary of $150 per month. The instrument further provided that the trustee deposit funds in such banks as he chose; that semi-annual statements of the affairs of the trust be rendered; that funds available for distribution be distributed "at least quarter annually"; that interests of the respective trustors might "be sold, transferred, or assigned in whole or in part but any such transfer shall only be binding on the Trustee when the original or certified copy of the instrument of transfer is received by him"; that in the event of death or disability of the trustee, E. P. Snyder and George T. Keating, "or the Survivor of them, shall thereupon immediately become substitute Trustee or Trustees"; and that the trust was to continue in force "so long as the properties owned by the Trust shall continue to be operated", or until all of the properties were sold and the proceeds distributed, "but in no event beyond the limitations placed by law for the duration of such Trust".

Paragraph "IX" of the "Trust Agreement" provided: "Anything herein to the contrary notwithstanding, the Trustors, either individually or collectively, shall not be liable for any of the obligations, liabilities, undertakings or acts of the Trust or the Trustee except to the extent of the moneys contributed by each of them toward the creation of the corpus of the Trust."

Zeppa testified that he had the above section included in the draft of the instrument after he had consulted an attorney as to the liabilities of the parties interested in the undertaking, "and, in or-

der to assume all the burden myself, with any liabilities there might be, I stipulated in the agreement that they would only be liable for the amount of money they contributed."

It is further shown that the petitioner had no office and paid no rent; that it had no telephone, furniture, or office equipment; and that it had no seal and held no meetings. Zeppa kept a record of the petitioner's transactions from the beginning, and it is shown that he opened a bank account in the name of "J. Zeppa, Trustee", and in that name received payment for oil runs and made deposits.

■ Because of the many and varied ways in which the question may arise, there is no one rule or set formula for determining whether a trust is an "association" taxable as a corporation. Each case must be decided upon its own particular facts. Under a variety of circumstances the Supreme Court has discussed the principles to be applied in determining the question. Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263; Swanson v. Commissioner, 296 U.S. 362, 56 S.Ct. 283, 80 L.Ed. 273; Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 56 S.Ct. 285, 80 L.Ed. 278; Helvering v. Combs, 296 U.S. 365, 56 S.Ct. 287, 80 L.Ed. 275. It is unnecessary to again detail the principles announced in these cases. In the case at bar five persons, under centralized management and control, are carrying on a business venture for profit, with provision for prorata distribution of the gains and profits from their undertaking. Moreover, the "Trust Agreement" under which the operations are carried on by express terms purports to limit the respective liabilities of the parties to the amounts actually contributed to the enterprise by them. The property is held in the name of "J. Zeppa, Trustee", and interests of the parties may be transferred, sold, or assigned "in whole or in part" without interrupting the continuity of the venture; and in the event of death or disability of the trustee, provision is made for substitute trustees to carry on. These are express provisions of the instrument and the parties may not now say that their purpose was "other or narrower than that which they formally set forth in the instrument under which their activities were conducted". Helvering v. Coleman-Gilbert Associates, supra [296 U.S. 369, 56 S.Ct. 287, 80 L.Ed. 278]. Furthermore, the fact that the petitioner had no office, telephone, or office furniture, and had no seal and held no meetings as corporations ordinarily do, does not establish that it was not an association taxable as a corporation. The inclusion of associations with corporations by § 1001(a) (2) implies resemblance between the two, but as pointed out by the Supreme Court in Morrissey v. Commissioner, supra [296 U.S. 344, 56 S.Ct. 295, 80 L.Ed. 263], "it is resemblance and not identity" that is intended, and definitions are not to be pressed so far as to make mere formal procedure a controlling test, and that while use of corporate forms may furnish persuasive evidence of the existence of an association, "the absence of particular forms, or of the usual terminology of corporations, cannot be regarded as decisive."

■ The Commissioner and the Board of Tax Appeals correctly determined that the petitioner is an association taxable as a corporation. Indeed, upon this record no other determination would be authorized. Applying the principles of the cases cited above we think this petitioner resembles a corporation more than it does anything else, and that, under § 1001(a) (2) and the applicable Treasury Regulations, it is clearly an association taxable as a corporation. Also see Commissioner v. Horseshoe Lease Syndicate, 5 Cir., 110 F.2d 748; Commissioner v. Fortney Oil Co., County Farm Lease (Commissioner v. Towline Oil Co.), 6 Cir., 125 F.2d 995, decided February 7, 1942.

The decision of the Board of Tax Appeals is affirmed.