OAK COMMERCIAL CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ARAMO-STIFTUNG, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 11007, 11612. Promulgated November 18, 1947.

*Monroe Collenburg, Esq.*, for the petitioners.
*Ellyne E. Strickland, Esq.*, for the respondent.

**OPINION.**

DISNEY, *Judge*: The first issue for our determination is whether the respondent erred in determining that petitioner Aramo-Stiftung is subject to Federal income tax on dividends from stock of domestic corporations, in the amounts set forth above. The determination is presumed to be correct. To overcome the presumption, petitioner argues: "The assessment against Aramo-Stiftung was improper since it was with respect to dividends which, although claimed by Aramo-Stiftung as its property, were never paid to it and cannot be deemed to have been received by it" and "The assessment of any income taxes with respect to the dividends involved in these petitions is premature and must await the actual or constructive receipt of the dividends by the owner."

According to the record, petitioner Aramo-Stiftung claims to be the actual owner of the stock from which the dividends arise. The brokers to whom the dividends were paid do not dispute that claim, and no other party has claimed the dividends. Furthermore, a defense for this action would be a showing on the part of petitioner Aramo-Stiftung that it is not the owner of the stock here in question, but rather than such a showing, the contrary is attempted to be shown, that is, Aramo-Stiftung claims to be the owner. Since there is no real conflict between the parties concerning the fact that Aramo-Stiftung is the owner of the stock here in question, we see no reason to pursue the query further.

With Aramo-Stiftung's undenied ownership of the dividends as a premise, we next examine the facts to determine whether the Commissioner's determination has been proved incorrect. Petitioner Aramo-Stiftung's strongest argument on this point appears to be that it did not constructively receive the dividends here in question. With this we can not agree. The dividends were paid by the domestic corporations to the brokers because the brokers were the record owners of the stock. Such a payment released the domestic corporations from further liability or responsibility concerning the dividends. The details of how the stock came to be registered in the names of the brokers, rather than in the name of the actual owner are lacking from the record. A bare thread of information is all we have on this point.

That is the fact that the brokers received instructions from bankers in Switzerland to transfer the stock here in question, endorsed in blank, to Oak Commercial Corporation. These instructions were followed, but the reasons for following them are not to be found. Furthermore, it is not explained why this method (of giving instructions to the brokers through the bankers in Switzerland) was not followed concerning the payment of the dividends to the actual owners. Instead of using the same method of giving instructions through the bankers in Switzerland, Aramo-Stiftung later, in 1945, requested the brokers to pay it the dividends. With no further information, it appears proper for the brokers to require guarantees and other information, as they did, before paying the dividends.

The doctrine of constructive receipt of income is embodied in Regulations 111, section 29.42–2.[1] The pertinent part of this regulation as pertaining to the instant case is as follows: "To constitute receipt in such a case the income must be credited *or set apart* to the taxpayer *without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made*, and must be made available to him so that it may be drawn at any time, and its receipt brought within his own control and disposition." (Italics supplied.) The dividends here in question were set apart by the paying domestic corporations when they were delivered to the brokers. Though the identity of the owner of the dividends *may* have been undisclosed at the time of payment to the brokers, it still remains a fact that the availability of the dividends rests in the hands of the owner. "The test *is the availability of the sum* credited to the account of the taxpayer. *If available, it is taxable as income.*" (Italics supplied.) *Foley* v. *Commissioner*, 94 Fed. (2d) 958. The owner of the stock here in question permitted the certificate of stock to be registered in the name of the brokers in the manner heretofore described. The fact that the brokers turned the stock certificates over to Oak Commercial Corporation is a strong indication that they had some contact with the actual owner of the stock.

As the above regulation indicates, the question turns on the fact of whether or not there is any substantial limitation or restriction as to the time or manner of payment. The petitioner has not proved that any such limitations or restrictions exist. True, the brokers have

---

[1] SEC. 29.42–2. INCOME NOT REDUCED TO POSSESSION.—Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. To constitute receipt in such a case the income must be credited or set apart to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and must be made available to him so that it may be drawn at any time, and its receipt brought within his own control and disposition. A book entry, if made, should indicate an absolute transfer from one account to another. If a corporation contingently credits its employees with bonus stock, but the stock is not available to such employees until some future date, the mere crediting on the books of the corporation does not constitute receipt.

made certain requirements that must be met before they release the dividends to Aramo-Stiftung, but these requirements were of mere proof of identity.

We do not have here a case of conflicting claims to the dividends, rendering it impossible for the petitioner Aramo-Stiftung to collect until the end of litigation over the fund, nor one of "vain efforts to collect" from a debtor who contends that another should pay, as in *C. Florian Zittel*, 12 B. T. A. 675. True, Aramo-Stiftung had requested payment, but there was no denial of liability by the brokers. In effect, they "set apart" the dividends to whoever was the owner, within the language of the regulation above quoted, and were ready to pay the real owner. The funds could be "drawn upon" by Aramo-Stiftung at any time, if it was the owner. The brokers did not deny this, did not claim for themselves the dividends, but merely required to be made safe in paying out. The dividends were "made available" to Aramo-Stiftung, providing only that it was the owner. In our opinion, this was not such condition or impediment to receipt as to prevent constructive receipt. It must be remembered that Aramo-Stiftung says it is the owner, entitled to the dividends. That Kolb, creator and founder of Aramo-Stiftung, who appointed its trustees and was one of the two trustees, caused these securities to be transmitted to a corporation formed at his instigation and placed in the names of the brokers. It was Kolb who named Aramo-Stiftung as owner and signed the letters advising the brokers of ownership by Aramo-Stiftung and that the dividends belonged to Aramo-Stiftung and should be credited to it, after payment of taxes. Considering the control which Aramo-Stiftung had had over the property, we find it not reasonable to believe that it could not have demonstrated its ownership to the dividends to the satisfaction of the brokers. Their requirements seem reasonable, under all the circumstances. Apparently, for reasons not disclosed by the record, a desire for anonymity of the beneficiaries of the "Stiftung," or foundation, was the reason for not complying with the brokers' requirement, and not inability to comply therewith. At least it has not been shown that it was not within the power of Aramo-Stiftung to make such disclosure as to satisfy the brokers. No effort is shown, aside from the one set of letters or directions, and that was not until July 5, 1945—whereas we have here before us 1940–1943. In other words, no effort was made in the taxable years to secure the dividends, and they were apparently voluntarily left with the brokers. Nothing of record shows that in 1940–1943, the brokers refused to pay to Aramo-Stiftung, or were ever requested so to do. Under all these circumstances, we conclude and hold that it has not been shown that the Commissioner erred in taxing the dividends to Aramo-Stiftung for the taxable years.

The amended petition alleges error in the determination that

Aramo-Stiftung is a personal holding company, but, though the matter was briefed by the respondent, the petitioner does not, upon brief, refer to the question, making its entire argument upon the issue as to whether income was received. We therefore regard the contention of error as to personal holding company as abandoned, and affirm the Commissioner in that respect.

The third issue to be determined as to Aramo-Stiftung is whether it is liable for the 25 per cent penalty for failure to file income tax and personal holding company tax returns for the taxable years.

No evidence was introduced on behalf of petitioner Aramo-Stiftung to show that its failure to file timely income tax returns and personal holding company tax returns was due to reasonable cause, and petitioner's brief contains no argument with reference to the penalties asserted. It is true that it is stipulated that from April 20, 1943, until November 7, 1944, there was no postal service between the United States and Switzerland or between the United States and Liechtenstein, but this fact would not affect timely filing of returns for 1940, 1941, 1942, or 1944. It obviously might have affected timely filing for 1943, but no reliance is placed upon such facts, and no reports, timely or otherwise, were filed at any time for Aramo-Stiftung. Sections 508 and 291 of the Internal Revenue Code [2] expressly provide for such penalties and we hold petitioner liable under said sections.

The three issues to be determined as to Oak Commercial Corporation, Docket No. 11007, may be disposed of summarily. On brief, respondent makes the statement that it is not his contention that taxes should be collected from both of these petitioners on the same items of income. Due to our holding in regard to Aramo-Stiftung and this view on the part of respondent, we consider it unnecessary to discuss these issues further, other than to say that we see no liability on the part of Oak Commercial Corporation for any of the taxes assessed by the Commissioner.

*Decision will be entered under Rule 50.*

---

[2] SEC. 508. ADMINISTRATIVE PROVISIONS.

All provisions of law (including penalties) applicable in respect of the taxes imposed by chapter 1, shall insofar as not inconsistent with this subchapter, be applicable in respect of the tax imposed by this subchapter, except that the provisions of section 131 shall not be applicable.

SEC. 291. FAILURE TO FILE RETURN.

(a) In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. The amount so added to any tax shall be collected at the same time and in the same manner and as a part of the tax unless the tax has been paid before the discovery of the neglect, in which case the amount so added shall be collected in the same manner as the tax. The amount added to the tax under this section shall be in lieu of the 25 per centum addition to the tax provided in section 3612 (d) (1).