# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 11, 2022

Lyle W. Cayce
Clerk

No. 21-51064

Daphne Jeanette Rost, *Executor of the Estate of John H. Rebold*,

*Plaintiff—Appellant*,

*versus*

United States of America, the Internal Revenue Service,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:19-CV-607

Before Smith, Duncan, and Oldham, *Circuit Judges*.
Stuart Kyle Duncan, *Circuit Judge*:

In 2005, John Rebold formed the Enelre Foundation as a *Stiftung* under the laws of Liechtenstein. *Stiftung* is a German word meaning, roughly, "foundation" or "endowment." Enelre's purpose is to provide education and general support for Rebold and his children. Rebold transferred $3 million to Enelre's bank accounts. He later learned the IRS would consider Enelre a "foreign trust," triggering certain reporting requirements. Rebold belatedly filed the reports, and the IRS assessed penalties. Rebold paid the

No. 21-51064

penalties and then filed this refund action. The district court granted summary judgment for the government. We affirm.

I.

A.

The Internal Revenue Code (IRC) requires disclosures regarding foreign trusts. *See* I.R.C. § 6048. Under section 6048(a), a "United States person" must report "the creation of any foreign trust" and "the transfer of any money or property (directly or indirectly) to a foreign trust." *Id.* § 6048(a)(1), (3)(A)(i)–(ii). A "United States person" includes U.S. citizens and residents. *Id.* § 7701(a)(30)(A). These reportable events are disclosed to the IRS on Form 3520.[1] Failure to timely file the form or to fully disclose all required information results in a "penalty equal to the greater of $10,000 or 35 percent of the gross reportable amount." *Id.* § 6677(a). The "gross reportable amount" is "the gross value of the property involved in the event (determined as of the date of the event)." *Id.* § 6677(c).

Under section 6048(b), as in effect during the years relevant to this case, anyone treated as the owner of a foreign trust under the grantor trust rules of I.R.C. §§ 671–679 must "ensure" the trust annually "makes a return . . . which sets forth a full and complete accounting of all trust activities and operations for the year, the name of the United States agent for such trust, and such other information as the Secretary may prescribe." *Id.*

---

[1] *See* Treas. Reg. § 16.3-1(a) (2018), *removed by* Eliminating Unnecessary Tax Regulations, 84 Fed. Reg. 9231-01, 9238 (Mar. 14, 2019); *see also* Form 3520, Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts, Dep't Treas. & IRS (2021), https://www.irs.gov/pub/irs-pdf/f3520.pdf.

No. 21-51064

§ 6048(b)(1)(A) (2009).[2] The return is made on Form 3520-A.[3] Failure to timely file the form or to fully disclose all required information results in "a penalty equal to the greater of $10,000 or [5] percent of the gross reportable amount." *Id.* § 6677(a)–(b). The "gross reportable amount" is "the gross value of the portion of the trust's assets at the close of the year treated as owned by the United States person." *Id.* § 6677(c)(2).

### B.

Rebold was a U.S. citizen who worked overseas as an engineer in the oil and gas industry. In 2005, he traveled to Switzerland and created the Enelre Foundation as a *Stiftung*[4] under the laws of Liechtenstein. At the time

---

[2] In 2010, Congress amended section 6048(b) to require that a foreign trust owner not only "ensure" the trust makes an annual return but also directly "submit" a return "with respect to such trust for such year." I.R.C. § 6048(b)(1) (2010).

[3] *See* Treas. Reg. § 404.6048-1(a) (2017), *removed by* Eliminating Unnecessary Tax Regulations, 84 Fed. Reg. at 9239; *see also* Form 3520-A, Annual Information Return of Foreign Trust With a U.S. Owner, Dep't Treas. & IRS (2021), https://www.irs.gov/pub/irs-pdf/f3520a.pdf.

[4] *Stiftung* is translated from German to English as "foundation," "establishment," "donation," or "endowment." *German-English Translation for "Stiftung,"* Langenscheidt, https://en.langenscheidt.com/german-english/stiftung (last visited Aug. 2, 2022); *Stiftung: German to English*, Collins, https://www.collinsdictionary.com/us/dictionary/german-english/stiftung (last visited Aug. 2, 2022). The plural form of *Stiftung* is "*Stiftungen*." *Stiftung v. Plains Mktg., L.P.*, 603 F.3d 295, 299 n.1 (5th Cir. 2010).

"A stiftung is a creation of the laws of Liechtenstein . . . , resembling a trust, but not limited to specific lives in being. A stiftung can own property and is controlled by an administrator (known as a stiftungerat) whose powers and duties are comparable to a trustee." *Kraus v. Comm'r*, 59 T.C. 681, 685 (1973). "A Stiftung does not have members or a board of directors." I.R.S. Chief Couns. Att'y Mem. AM2009-012, 2009 WL 3336014 (Oct. 7, 2009). In forming a *Stiftung*, the founder "transfers specific assets to the Stiftung that are then endowed for specific purposes," "states the objectives of the Stiftung[,] and appoints its [stiftungerat]." *Ibid.* A *Stiftung* "can be created for charitable or personal purposes" but "cannot be created to undertake commercial activities." Von E. Sanborn et al., *Classifying Trusts, Anstalts, and Stiftungs—When Is a Trust Not a Trust?*, A.L.I.-

3

of Enelre's founding, Rebold was the settlor and primary beneficiary, and his children were secondary beneficiaries. "Enelre" is the name of Rebold's wife, Erlene, spelled backwards.

Enelre's organizing documents provide that its purpose is to provide education, training, support, and maintenance for its beneficiaries. The documents prohibit "commercial trade" and do not provide for allocation of profits. They refer to Enelre as a trust, and Enelre has trustees and pays trustee fees. Liechtensteinian Public Registry filings reiterate Enelre's purpose and prohibition of commercial business.

Rebold opened bank accounts for Enelre at Credit Suisse, UBS, and Bank Wegelin. He transferred $2 million to Enelre in 2005 and another $1 million in 2007. Neither Rebold nor Enelre filed Form 3520 or 3520-A disclosing to the IRS the creation of Enelre or these transfers.

In 2010, UBS notified Rebold that it intended to turn over Enelre's account records to the IRS. Rebold consulted counsel regarding tax liability for Enelre. An attorney for "the trust and trustees" (*i.e.*, Enelre and its trustees) advised Rebold's counsel that Rebold was "an American who set up a foreign trust, so [h]e will need to do 3520's and 3520-A's as well as amended US returns," and recommended that he participate in a voluntary disclosure program "to limit his exposure to penalties." That attorney noted that Rebold "will owe some serious tax! Nothing to be taken lightly." Rebold's counsel explained that he was "trying to find a way to treat the

---

A.B.A. Course of Study, SL003 ALI-ABA 293, 300 (July 2005). "Liechtenstein law provides that in certain cases commercial activities may be undertaken by a Stiftung if such activities serve its noncommercial purposes." AM2009-012, 2009 WL 3336014. Once formed, the *Stiftung* "is entered onto the Register in Liechtenstein and must have a minimum amount of initial capital." *Ibid.* The *Stiftung* "exists for the benefit of those named in its formation documents as being appointed as beneficiaries." *Ibid.*

Enelre Foundation as something other than a trust for US tax purposes," which was "not easy."

In 2013, Daphne Jeanette Rost, Rebold's daughter and power of attorney, filed a Form 3520 for 2005 on Rebold's behalf, reporting that he owned a portion of Enelre and had transferred money to it. Rost also filed Forms 3520-A for the years 2005, 2006, and 2007, reporting year-end balances of $1,680,272, $1,807,873, and $3,116,898, respectively.

In 2014, the IRS assessed $1,380,252.35 in penalties against Rebold under section 6677(a) and (b) for his failure to timely file Forms 3520 and to ensure that Enelre timely filed Forms 3520-A in 2005, 2006, and 2007. The IRS soon notified Rebold of its intent to levy the penalties. Rebold contested his liability and requested collection due process hearings. The IRS Appeals Office sustained the levy notices but cut the penalties in half. In June 2017, Rebold paid the penalties, as adjusted. In August 2018, he filed administrative refund claims with the IRS.

## C.

In June 2019, having not received a decision from the IRS, Rebold filed this action, seeking refunds for the penalties. Upon Rebold's death in December 2019, Rost, his executor, substituted as plaintiff.

After discovery, the parties cross-moved for summary judgment on Rebold's liability. The government argued that federal tax law determines the classification of an entity as a trust for tax purposes and that, under a facts-and-circumstances test, Enelre qualified as a foreign trust. Rost argued that because no statute, regulation, or judicial decision provides that a Liechtensteinian *Stiftung* is a foreign trust for federal tax purposes, the penalties violated the government's "duty of clarity when imposing sanctions," the Administrative Procedure Act (APA), and the Due Process Cause.

The court granted the government's motion and denied Rost's. *Rost v. United States*, No. 1:19-CV-0607-RP, 2021 WL 5190875 (W.D. Tex. Sept. 22, 2021). Applying a facts-and-circumstances test, the court held that Enelre qualified as a foreign trust based on its purpose and form, as stated in its organizing documents, and because it failed the tests for domestic trusts set forth in Treasury regulations. *Id.* at \*4. The court found that Rost submitted no evidence "demonstrating fact issues that would prevent [it] from determining that [Enelre] is a 'foreign trust' as a matter of law." *Ibid.* The court rejected Rost's notice arguments, finding the statutory and regulatory frameworks were "sufficiently clear." *Id.* at \*5, \*7–9. Rost timely appealed.

## II.

We review a summary judgment *de novo*. *United States v. Bittner*, 19 F.4th 734, 740 (5th Cir. 2021) (citation omitted), *cert. granted*, 142 S. Ct. 2833 (2022). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the movant satisfies this burden, the nonmovant "must present competent summary judgment evidence of the existence of a genuine [dispute] of fact." *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016) (citations omitted). "We view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in its favor." *Bittner*, 19 F.4th at 740 (citation omitted).

In a tax refund action, "the taxpayer bears the burden of proving both the error in the assessment and the amount of refund to which he is entitled." *Brown v. United States*, 890 F.2d 1329, 1334 (5th Cir. 1989) (citations omitted); *see also Trinity Indus., Inc. v. United States*, 757 F.3d 400, 413 (5th Cir. 2014).

III.

At bottom, Rost argues that Rebold had insufficient notice that Enelre qualifies as a foreign trust for federal tax purposes. She contests the facts-and-circumstances test employed by the district court. She claims that applicable statutes, regulations, and case law do not clearly "connect[] the imposition of penalties for failure to file *foreign trust* information returns with respect to a Liechtenstein *Stiftung*." She then argues the penalties violate the APA, the government's "duty of clarity," and due process.

We disagree with each contention. We first outline the legal framework for classifying an arrangement as a foreign trust, then explain why Enelre qualifies as one, and then address Rost's notice arguments.

A.

The classification of an organization "for federal tax purposes is a matter of federal tax law and does not depend on whether the organization is recognized as an entity under local law." Treas. Reg. § 301.7701-1(a). Sections 301.7701–2, 301.7701–3, and 301.7701–4 determine the classification of organizations recognized as separate entities, unless the IRC "provides for special treatment of that organization." *Id.* § 301.7701-1(b). Neither the IRC nor its regulations specifically classify or provide for special treatment of *Stiftungen*. *Cf. id.* § 301.7701-2(b)(8) (classifying Liechtenstein *Aktiengesellschaften* as corporations).

Determining whether an arrangement is a foreign trust requires a two-step inquiry: (1) whether it is a trust under section 301.7701-4 or a business entity under sections 301.7701-2 or 301.7701-3, and (2) if it is a trust, whether it is a United States person (*i.e.*, a domestic trust) or a foreign trust. *See* I.R.C. § 7701(a)(30)(E), (31)(B); Treas. Reg. §§ 301.7701-1(a)–(b), (d), 301.7701-2(a), 301.7701-4(a), 301.7701-5(a), 301.7701-7.

A "trust" in the IRC is an arrangement where "trustees take title to property for the purpose of protecting or conserving it for the beneficiaries." Treas. Reg. § 301.7701-4(a). An arrangement generally qualifies as a trust if "the purpose of the arrangement is to vest in trustees responsibility for the protection and conservation of property for beneficiaries who cannot share in the discharge of this responsibility and, therefore, are not associates in a joint enterprise for the conduct of business for profit." *Ibid.*; *see also Frank Aragona Tr. v. Comm'r*, 142 T.C. 165, 175 (2014).

An arrangement's purpose thus distinguishes a trust from other entities. "[A]ny entity recognized for federal tax purposes . . . that is not properly classified as a trust under § 301.7701–4" is a "business entity." Treas. Reg. § 301.7701-2(a). Arrangements "known as trusts because the legal title to property is conveyed to trustees for the benefit of beneficiaries" may nevertheless not qualify as trusts under the IRC "because they are not simply arrangements to protect or conserve the property for the beneficiaries." *Id.* § 301.7701-4(b). "Business trusts," for example, "generally are created by the beneficiaries simply as a device to carry on a profit-making business which normally would have been carried on through business organizations that are classified as corporations or partnerships under the [IRC]." *Ibid.*; *see Petersen v. Comm'r*, 148 T.C. 463, 475 n.8 (2017).

In classifying an arrangement as a trust or other business entity for tax purposes, "there is no one rule or set formula," and "[e]ach case must be decided upon its own particular facts." *Keating-Snyder Tr. v. Comm'r*, 126 F.2d 860, 862 (5th Cir. 1942); *see also Comm'r v. Horseshoe Lease Syndicate*, 110 F.2d 748, 749 (5th Cir. 1940) ("the facts of each case[] must control"). The seminal case is *Morrissey v. Commissioner*, 296 U.S. 344 (1935). There, the Supreme Court held that a trust created for developing tracts of land and constructing and operating a golf course was properly classified and taxed as "an association" (*i.e.*, a business trust), rather than an ordinary trust, based

No. 21-51064

on its "character" and "salient features," including the trustees' "use and adaptation of the trust mechanism." *Id.* at 359–61. The Court applied *Morrissey*'s fact-specific approach in three companion cases decided that same day. *See Swanson v. Comm'r*, 296 U.S. 362 (1935); *Helvering v. Coleman-Gilbert Assocs.*, 296 U.S. 369 (1935); *Helvering v. Combs*, 296 U.S. 365 (1935).

An arrangement's most relevant features for tax-classification purposes are its "nature," "purpose," and "operations." *Morrissey*, 296 U.S. at 357; *Swanson*, 296 U.S. at 365.[5] The form of organization under which the arrangement operates "may furnish persuasive evidence" of a classification but "cannot be regarded as decisive." *Morrissey*, 296 U.S. at 358. No feature is dispositive; they "all go to the point of whether the trust is being used to achieve the organizational conveniences of the corporate form." *Guar. Emps. Ass'n v. United States*, 241 F.2d 565, 571 (5th Cir. 1957).

In assessing these features, the arrangement's organizing documents are determinative. *See Swanson*, 296 U.S. at 363–65; *Morrissey*, 296 U.S. at 360–61. As the Supreme Court has explained, "parties are not at liberty to say that their purpose was other or narrower than that which they formally set forth in the instrument under which their activities were conducted." *Coleman-Gilbert*, 296 U.S. at 374.[6]

---

[5] *Morrissey* relied on five corporate features to conclude the trust was "analogous to a corporate organization" and thus qualified as an "association," or "business trust." 296 U.S. at 359–61. These features are "(1) title to the property held by the entity, (2) centralized management, (3) continuity uninterrupted by deaths among the beneficial owners, (4) transfer of interest without affecting the continuity of the enterprise, and (5) limitation of the personal liability of participants." *Comm'r v. Rector & Davidson*, 111 F.2d 332, 333 (5th Cir. 1940); *see Kurzner v. Comm'r*, 413 F.2d 97, 101–04 & n.22 (5th Cir. 1969) (reviewing *Morrissey*'s discussion of "distinguishing attributes of 'corporateness'").

[6] *See also Abraham v. United States*, 406 F.2d 1259, 1262–63, 1263 n.4 (6th Cir. 1969) (finding "broad powers . . . for conducting a business for profit . . . carefully spelled out" in the trust instrument could not "be negated by [a] self-serving limiting declaration

No. 21-51064

Once an entity is deemed a trust, it must be classified as foreign or domestic. A foreign trust is "any trust other than a trust" that is a "United States person" (*i.e.*, a domestic trust). I.R.C. § 7701(a)(30)(E), (31)(B); Treas. Reg. § 301.7701-7(a)(2). A trust is domestic if (1) "a court within the United States is able to exercise primary supervision over the administration of the trust" (the "court test") *and* (2) "one or more United States persons have the authority to control all substantial decisions of the trust" (the "control test"). I.R.C. § 7701(a)(30)(E); Treas. Reg. § 301.7701-7(a)(1).

A trust satisfies the court test if the governing document "does not direct that the trust be administered outside of the United States," "[t]he trust in fact is administered exclusively in the United States," and "[t]he trust is not subject to an automatic migration provision" that would move it outside the U.S. if a U.S. court were to "attempt to assert jurisdiction" over it. Treas. Reg. § 301.7701-7(c)(1), (4)(ii). As to the control test, "control means having the power, by vote or otherwise, to make all of the substantial decisions of the trust, with no other person having the power to veto [them]." *Id.* § 301.7701-7(d)(1)(iii). This includes anyone with authority over substantial decisions, not only trust fiduciaries. *Ibid.* Substantial decisions are those "authorized or required" under the trust instrument and applicable law "that are not ministerial." *Id.* § 301.7701-7(d)(1)(ii) (providing examples).

---

contained in the last paragraph" that the trust "shall not be deemed or considered a trust operated for financial profit"); *Nee v. Main St. Bank*, 174 F.2d 425, 429 (8th Cir. 1949) ("The intention, through the creation of a trust, to conduct a business enterprise may accordingly legally be inferred . . . from the enumeration in the instrument of powers which, if exercised, would necessarily cause such an enterprise to result."); *Sears v. Hassett*, 111 F.2d 961, 962–63 (1st Cir. 1940) (noting the "character of the trust" is determined by "the purposes and potential activities as disclosed on the face of the trust instrument").

B.

The district court correctly found that Enelre qualifies as a foreign trust. Its organizing documents explain that Enelre's purpose is to support its beneficiaries and limit its transactions to "pursuing and realising its purpose." This is "characteristic of an ordinary trust." *Morrissey*, 296 U.S. at 356–57. The documents also prohibit Enelre from conducting commercial trade. Liechtensteinian Public Registry filings confirm this prohibition. Enelre's familial purpose, lack of business objective, and bar on commercial activity render it a trust. *See McKean v. Scofield*, 108 F.2d 764, 765–66 (5th Cir. 1940) (holding a trust was taxable as a trust and not an association because "[s]olicitude for the future of [the settlor's] family [wa]s a main purpose of the trust"); *see also Estate of Bedell v. Comm'r*, 86 T.C. 1207, 1221 (1986) (holding a "trust characterized by a dominant familial objective" was taxable as a trust and not an association because it lacked a business purpose).[7]

Enelre's form of organization confirms it is a trust. Enelre is subject to Liechtenstein's "Act on Trust Enterprises." Its board members serve the same function as independent trustees, and Enelre's counsel considered them trustees. Enelre also has beneficiaries like an ordinary trust. Rebold described himself as "Settlor and Beneficiary" of Enelre, and he transferred money to Enelre the same way a trust grantor would. Rebold's children, the other beneficiaries, were not involved with Enelre and did not know it existed during the years in question, so they could not have been "associates"

---

[7] *Cf. Coleman-Gilbert*, 296 U.S. at 373–74 (holding trust was taxable as an association because the parties engaged "in carrying on an extensive business for profit"); *Adkins Props. v. Comm'r*, 143 F.2d 380, 381 (5th Cir. 1944) (holding trust with "an active business purpose, having the general characteristics and advantages of corporate organization" was taxable as an association); cases cited *supra* note 6.

engaged in a common business enterprise. *See Morrissey*, 296 U.S. at 357; *cf. Elm St. Realty Tr. v. Comm'r*, 76 T.C. 803, 813–18 (1981). And Enelre's organizing documents do not provide for profit sharing. *See Morrissey*, 296 U.S. at 357.

Enelre is not a domestic trust. It fails the court test because any disputes must proceed to arbitration under Liechtensteinian law, with "the President of the Princely Liechtenstein Court of Appeal" assisting in appointing an arbitrator. *See* I.R.C. § 7701(a)(30)(E)(i); Treas. Reg. § 301.7701-7(a)(1)(i), (c)(1). And it fails the control test because Rebold, as settlor, "waive[d] any influence on [Enelre] and on any other rights whatsoever towards [Enelre], [its] board, and the beneficiaries," and Enelre's board has decision-making authority. *See* I.R.C. § 7701(a)(30)(E)(ii); Treas. Reg. § 301.7701-7(a)(1)(ii), (d)(1)(i)–(iii). Failing both tests, Enelre is not a domestic trust and so qualifies as a foreign trust. *See* I.R.C. § 7701(a)(30)(E), (31)(B); Treas. Reg. § 301.7701-7(a)(1)–(2); *see also Kaplan v. Comm'r*, 107 T.C.M. (CCH) 1226, 2014 WL 988465, at *7 (Mar. 13, 2014) (holding trusts "organized under the laws of the Isle of Jersey and supervised by the Royal Court of Jersey[] are foreign trusts").

Rost argues that because the IRC and its regulations do not specifically classify Liechtensteinian *Stiftungen* as trusts, they could be corporations, partnerships, or other entities. They very well could, under certain facts and circumstances. But Rost presents no evidence that Enelre should be classified as anything other than a trust. *See, e.g.*, *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) ("A non-movant will not avoid summary judgment by presenting 'speculation, improbable inferences, or unsubstantiated assertions.'" (citation omitted)).

Rost also claims that courts have treated a *Stiftung* as a corporation under the IRC, citing *Oak Commercial Corp. v. Commissioner*, 9 T.C. 947

(1947), *aff'd sub nom. Aramo-Stiftung v. Commissioner*, 172 F.2d 896 (2d Cir. 1949). But there, neither the Tax Court nor the Second Circuit evaluated whether the *Stiftungen* were properly characterized as foreign corporations. The Tax Court merely accepted the IRS's position that the *Stiftungen* were corporations because the taxpayer failed to challenge the classification. *See Oak Commercial*, 9 T.C. at 954–55. Accordingly, the treatment of the *Stiftungen* there is unhelpful. *See Estate of Swan v. Comm'r*, 247 F.2d 144, 147 n.3 (2d Cir. 1957); *Estate of Swan v. Comm'r*, 24 T.C. 829, 860 (1955).

## C.

Rost's notice arguments are without merit. Rost first claims the penalties violate the APA because the government relied on an unwritten "rule" promulgated without notice and comment that *Stiftungen* are foreign trusts for tax purposes. But the government applied no "rule." *See* 5 U.S.C. § 551(4) (defining "rule"). As the district court explained, "Rost's argument is based on the faulty premise that the IRS established a 'rule' that a *Stiftung* always qualifies as a 'foreign trust.'" *Rost*, 2021 WL 5190875, at *8. The IRS has consistently recognized that each *Stiftung* must be analyzed on its own facts and circumstances. *See, e.g.*, I.R.S. Chief Couns. Att'y Mem. AM2009-012, 2009 WL 3336014 (Oct. 7, 2009). Rost does not challenge the validity of the regulations under which Enelre qualifies as a foreign trust. *See* Treas. Reg. §§ 301.7701-4, 301.7701-7.

Rost next argues the penalties "violate[] the duty of clarity for tax laws," citing *Central Illinois Public Service Co. v. United States*, 435 U.S. 21 (1978). She claims the penalties cannot be imposed "without a clear description of the prohibited circumstances, facts, or status." This argument, too, is based on the false "presumption that the IRS automatically considers a *Stiftung* to be a foreign trust for tax and penalty purposes." *Rost*, 2021 WL 5190875, at *8.

No. 21-51064

Rost claims there is "no indication which foreign entities" the government "might deem to be a *foreign trust*." But the IRS is not obligated to promulgate a regulation listing all foreign entities that are or may be classified as a foreign trust. As *Morrissey* acknowledged, "it is impossible in the nature of things to translate the statutory concept of 'association' into a particularity of detail that would fix the status of every sort of enterprise or organization which ingenuity may create." 296 U.S. at 356. So too for trusts.

In any event, *Central Illinois* is inapposite. There, the Court held an employer could not be penalized for failing to withhold income taxes on reimbursements of meal expenses for employees day-traveling on business because it was unclear at the time that the meals constituted wages subject to withholding. 435 U.S. at 29, 33. Rost identifies no decision applying this logic outside third-party withholding contexts. *Cf. id.* at 31 ("Because the employer is in a secondary position as to liability for any tax of the employee, it is a matter of obvious concern that . . . the employer's obligation to withhold be precise and not speculative.").[8] But even if it applied here, the legal framework set forth above is sufficiently precise.

Finally, Rost argues that the penalties violate due process because there is no "clear, written rule of law" that *Stiftungen* qualify as foreign trusts. As shown above, the IRC, regulations, and case law provide ample notice that the classification of an arrangement as a trust, and whether it is

---

[8] This defense has been dubbed the "'deputy tax collector' defense, . . . protect[ing] an employer from liability for failing to withhold employment taxes from its employees when the employer lacks 'precise and not speculative' notice of its duty to withhold." *N.D. State Univ. v. United States*, 255 F.3d 599, 608 (8th Cir. 2001) (quoting *Cent. Ill.*, 435 U.S. at 31); *see also Univ. of Chi. v. United States*, 547 F.3d 773, 784 (7th Cir. 2008); *Gen. Elevator Corp. v. United States*, 20 Cl. Ct. 345, 354 (1990).

No. 21-51064

foreign or domestic, are case-specific inquiries based on the facts and circumstances.[9]

## IV.

The district court's judgment is AFFIRMED.

---

[9] Rost also claims there was no statutory authority to penalize Rebold for failing to file Form 3520-A before the 2010 amendment to section 6677. We decline to consider this argument because Rost did not raise it below. *See, e.g.*, *Rollins v. Home Depot USA*, 8 F.4th 393, 397–99 (5th Cir. 2021); *Doe v. MySpace, Inc.*, 528 F.3d 413, 422 (5th Cir. 2008).